HAMILTON, Petitioner-Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent.

Supreme Court

*No. 77–389. Submitted on briefs February 7, 1980.—Decided March 4, 1980.*
(Also reported in 288 N.W.2d 857.)

612

For the appellant the cause was submitted on the brief of *Edward F. Neubecker* and *Barry F. Bruskin,* both of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David C. Rice,* assistant attorney general.

WILLIAM G. CALLOW, J. This is an appeal from an order of the Circuit Court for Dane County entered in a Chapter 227 review of a decision of the Department of Industry, Labor and Human Relations (DILHR), Equal Rights Division. That decision reversed the hearing examiner's finding that Appleton Electric Company (Appleton) discharged and refused to reinstate petitioner-appellant Cathy Hamilton (Hamilton) because of her rejection of sexual advances made by Hamilton's supervisor and Appleton's personnel manager and her subsequent protest of such conduct. The circuit court affirmed the DILHR Commission's findings of fact and conclusions of law, and Hamilton appeals.[1] We affirm.

[1] Notwithstanding its affirmance of DILHR's findings of fact and conclusions of law, the circuit court reversed DILHR's order dismissing Hamilton's complaint. The circuit court noted that, having found that Appleton discriminated against Hamilton on the basis of sex in her conditions of employment, DILHR was required to grant appropriate relief. Sec. 111.36(3)(b), Stats., provides in part: "If, after hearing, the department finds that the respondent has engaged in discrimination, it shall make written

Hamilton commenced employment with Appleton in May, 1966, when she was hired by Appleton's personnel manager, Joseph Archibald (Archibald), whose duties included hiring and firing decisions. On numerous occasions throughout Hamilton's employment, Archibald and her immediate supervisor made sexual advances and proposals to Hamilton. Hamilton rejected these advances and proposals, and in no way encouraged them.

On March 22, 1971, Hamilton sustained a work-related back injury. She consulted her personal physician, Dr. Nevels, and continued working after her injury. The injury caused her to be hospitalized from May 9, 1971, through May 29, 1971. While hospitalized, she was examined by a Dr. Shapiro, a physician for Appleton's worker's compensation carrier. Dr. Shapiro ordered treatment for Hamilton and reported that she would be able to return to work on Monday, July 12, 1971.

Early in July, Dr. Nevels referred Hamilton to a Dr. Salinsky, an orthopedic specialist. She was put in a body cast in July and hospitalized for five days in September, 1971. Salinsky released Hamilton to return to work on October 4, 1971. When she reported for work, she was advised that she had been terminated in July. She was not reinstated.

Archibald testified that the labor agreement covering Hamilton provided that an employee could be discharged if absent for three consecutive workdays without notifying Appleton. Archibald testified to the substance of the rule, and the DILHR Initial Determination and the Investigator's Report quoted the provision of the agreement involved. Based upon Dr. Shapiro's report that

---

findings and order such action by the respondent as will effectuate the purpose of this subchapter, with or without back pay." Accordingly, the circuit court remanded the matter to the Commission for reconsideration. DILHR does not appeal from this portion of the circuit court's order.

Hamilton could return to work July 12 and the absence of any notice from Hamilton that she was unable to return to work as required by the employment contract, Archibald discharged her when she did not report to work on July 12 or on either of the next two workdays. Hamilton testified her union steward told her that her former attorney notified Appleton Electric by letter that she was still under a doctor's care in July and that Archibald tore up the letter and threw it away upon its receipt. The steward did not testify, no copy of the letter appears in the record, and no date in July is specified to support a conclusion that the letter, if it existed, would have constituted timely notice.

On June 25, 1973, Hamilton, who is black, filed a discrimination complaint with DILHR against Appleton, alleging that she had been subjected to sexual advances and discharged because of her sex and her race. A DILHR field representative found probable cause to believe that Appleton Electric discriminated against Hamilton because of her sex. After a hearing on March 12, 1975, the hearing examiner recommended the Commission conclude that Appleton violated the Wisconsin Fair Employment Act by discharging Hamilton because of her sex and that the Commission order her reinstatement with back pay. The hearing examiner's recommended findings of fact state that Appleton's "refusal . . . to allow reinstatement of [Hamilton] after receiving competent medical evidence to the effect that she was not capable of performing the duties of her job until October 4, 1971 makes it abundantly clear that the reasons offered . . . for her termination are merely pretextual" and that "there is evidence tending to establish as a fact that the real reason for [Appleton's] refusal to reinstate [Hamilton] was based upon her rejection of the various sex proposals and advances made to her and her subsequent protest of such conduct."

Appleton filed timely exceptions, and oral argument was held before the DILHR Commission. After reviewing the record and consulting with the hearing examiner, the Commission concluded that Appleton discriminated against Hamilton in regard to her conditions of employment by subjecting her to the continued, insulting sexual advances and remarks of her superiors, but the Commission rejected the hearing examiner's recommendation. The Commission found that "[t]he reason for [Hamilton's] discharge was her failure to notify [Appleton] . . . that she would not be returning to work contrary to the recommendation of the physician of [Appleton's] insurer" and that Hamilton introduced "no evidence . . . to show that [Appleton's] agents ever linked their sex advances to threats to discharge her if she did not respond favorably." The Commission concluded that "[Hamilton] has failed to establish by a preponderance of the evidence that [Appleton] discriminated against her on the basis of sex by discharging her." The Commission dismissed Hamilton's complaint against Appleton without imposing any sanctions against Appleton or granting any relief to Hamilton on the basis of the finding that Appleton engaged in sex discrimination in conditions of employment.

Is there substantial evidence to support the Commission's finding (1) that Hamilton was not terminated because of her rejection of sexual proposals; and (2) that Hamilton was terminated because of her failure to notify Appleton on or about July 12, 1971, that she would not be returning to work?

"In reviewing an order of the circuit court affirming an order of an administrative agency the task of this court is to determine whether the circuit court erred in its determination." *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis.2d 408, 416, 280 N.W.2d 142 (1979). The

circuit court's review is confined to the record, sec. 227.-20(1), Stats., and must consider separately questions of law, fact, and procedure, sec. 227.20(3). The standards of review are defined by sec. 227.20(5) and (6).[2]

Agencies' factual findings must be supported by "substantial evidence." Sec. 227.20(6), Stats. This court has explained that substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Bucyrus-Erie Co. v. ILHR Department, Id.* at 418, quoting *Bell v. Personnel Board,* 259 Wis. 602, 608, 49 N.W.2d 889 (1951). It is not required that the evidence be subject to no other reasonable, equally plausible interpretations. In *Robertson Transportation Co. v. Public Service Comm.,* 39 Wis.2d 653, 658, 159 N.W.2d 636 (1968), we said:

"Substantial evidence is not equated with preponderance of the evidence. There may be cases where two conflicting views may each be sustained by substantial evidence. In such a case, it is for the agency to determine which view of the evidence it wishes to accept."

An agency determination being reviewed under Chapter 227 will not be overturned because it is against the great weight and clear preponderance of the evidence. *City*

---

[2] Sec. 227.20(5) and (6), Stats., provide:

"(5) The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.

"(6) If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record."

*of Superior v. ILHR Department,* 84 Wis.2d 663, 666, 267 N.W.2d 637 (1978). Rather, the agency's decision may be set aside by a reviewing court only when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable person, acting reasonably, could not have reached the decision from the evidence and its inferences. *Bucyrus-Erie Co. v. ILHR Department, supra* at 418; *Holtz & Krause, Inc., v. DNR,* 85 Wis.2d 198, 204, 270 N.W.2d 409 (1978).

Hamilton argues that the Commission could not have found that she was discharged for noncompliance with a labor agreement rule for the reason that the evidence of record does not contain the actual rule allegedly violated, although she concedes that there was testimony as to the substance of the rule. Hamilton also contends there is no evidence of what constitutes grounds for discharge under the rule, and therefore the Commission could not assess whether the rule was properly applied.

Archibald, who had served as Personnel Manager for over ten years and as such was involved in hiring, firing, handling grievances, and conducting negotiations, could be considered qualified to offer "testimony having reasonable probative value" concerning the provisions of the labor agreement admissible under the authority of sec. 227.08(1), Stats.[3] In response to a question by Hamil-

---

[3] Section 227.08(1), Stats., provides in part:

"**227.08 Evidence and official notice.** In contested cases:

"(1) Except as provided in s. 19.52(3), an agency or hearing examiner shall not be bound by common law or statutory rules of evidence. The agency or hearing examiner shall admit all testimony having reasonable probative value, but shall exclude immaterial, irrelevant or unduly repetitious testimony. The agency or hearing examiner shall give effect to the rules of privilege recognized by law. Basic principles of relevancy, materiality and probative force shall govern the proof of all questions of fact."

ton's attorney he said: "Our contract reads that if you miss work for three consecutive days without notifying the company by phone, personal appearance or telegraph, you may be discharged." Hamilton's attorney did not make any objection to this answer and does not now claim it was improperly admitted. Rather, Hamilton claims it is of insufficient probative value to constitute "substantial evidence."

Archibald's testimony alone, however, is not the only evidence of the labor agreement rule in question. In addition to Archibald's testimony, the DILHR Initial Determination and the Investigator's Report quote the agreement as providing that " '[a]ny employee absent for three (3) successive work days, and who fails to notify the company by phone, telegram, or personal appearance, may be discharged.' " The circuit court noted that Hamilton's brief to that court quotes the verbatim language of the agreement. Had the reported versions been in error and the contract actually provided otherwise, Hamilton could have produced the actual labor agreement rule. As complainant, Hamilton bears the burden of proving that Appleton's stated reason for discharge is pretextual. *Chicago, Milwaukee, St. Paul & Pacific RR. Co. v. ILHR Dept.,* 62 Wis.2d 392, 396, 215 N.W.2d 443 (1974).

The uniform application and substance of the notice rule was shown by testimony that other employees, both male and female, had been discharged for absenteeism when they failed to return to work after an occupational injury. The Commission's finding that Hamilton, like other employees, was discharged for failure to notify Appleton that she would not return to work is supported

by substantial evidence and was properly affirmed by the circuit court.

Even if substantial evidence supported the hearing examiner's finding that Appleton's stated reason for dismissal was pretextual and that the "real reason" for dismissal was Hamilton's refusal to accede to Archibald's advances, the Commission's findings should not be overturned because, as we have stated, "[t]here may be cases where two conflicting views may each be sustained by substantial evidence. In such a case, it is for the agency to determine which view of the evidence it wishes to accept." *Robertson Transportation Co. v. Public Service Comm., supra* at 658.

Moreover, this is not a case where conflicting views are both supported by substantial evidence. The Commission concluded that substantial evidence does not exist to support the hearing examiner's recommended finding that the real reason for Appleton's termination of and refusal to reinstate Hamilton was based upon her rejection of the various sex proposals and advances made to her and her subsequent protest of such conduct because "no evidence was introduced to show that [Appleton's] agents ever linked their sex advances to threats to discharge her if she did not respond favorably."[4]

---

[4] Hamilton does not challenge the Commission's reasoning that employment must be conditioned on acquiescence to the sexual advances of an employer or superior to constitute discrimination because of sex. We do not believe she could profitably do so. Subsequent to the Commission's decision, sec. 111.32(5)(g) 4, Stats., was created by Chapter 286, Laws of 1977, to read as follows:

"111.32 **Definitions.** When used in this subchapter:

". . .

"(5)(g) It is discrimination because of sex:

Additionally, Hamilton contends that the Commission is not free to overturn the hearing examiner's findings of fact because of his ability to assess credibility by observing the demeanor of witnesses firsthand. While due process requires that the Commission must have the benefit of the hearing examiner's personal impressions of the material witnesses when rejecting the examiner's recommendations, *Appleton v. ILHR Department*, 67 Wis.2d 162, 170–71, 226 N.W.2d 497 (1975), the Commission is empowered to reject the recommendations in rendering a final decision. Sec. 227.09(2), Stats. When doing so, the Commission must "(1) consult of record with the examiner to glean his impressions of the credibility of witnesses and (2) include in a memorandum opinion an explanation for its disagreement with the examiner." *Carley Ford, Lincoln, Mercury v. Bosquette*, 72 Wis.2d 569, 575, 241 N.W.2d 596 (1976) ; *Appleton v. ILHR Department, supra* at 171–72. Hamilton makes no

"4. For any employer, labor organization, licensing agency or person to make hiring, employment, admission, licensure, compensation, promotion or job assignments *contingent upon a person's consent to sexual contact or sexual intercourse as defined in s. 940.225(5)*." (Emphasis added.)

Such employment practices were not explicitly defined as sex discrimination prior to this enactment. We believe the legislation to be a ratification and codification of the Commission's reasoning.

We also note that the Commission's interpretation parallels the practice in actions under Title VII of the 1964 Civil Rights Act, 42 U.S.C. sec. 2000e–2 and 42 U.S.C. sec. 1983. *See, e.g., Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir. 1979). While Wisconsin courts considering claims of sex discrimination under the Wisconsin Fair Employment Act are not bound by decisions of the federal courts under Title VII, *Goodyear Tire & Rubber Co. v. DILHR*, 87 Wis.2d 56, 65, 273 N.W.2d 786 (Ct. App. 1978), "[t]his court has looked to such federal decisions before for guidelines in applying the state fair employment law." *Bucyrus-Erie Co. v. ILHR Department*, 90 Wis.2d 408, 421 n. 6, 280 N.W.2d 142 (1979).

showing that these requirements have not been met. The Commission specifically noted it reviewed the record and consulted with the examiner. The Commission did not act improperly in exercising its authority under sec. 227.-09(2), Stats., to reject the hearing examiner's recommendations.

The record contains substantial evidence to support the Commission's finding that Hamilton was not terminated because of her refusal to accede to her superior's sexual advances and that her discharge resulted from her failure to notify Appleton that she would not be returning to work in violation of the notice rule.

*By the Court.*—Order affirmed.