MCI TELECOMMUNICATIONS CORPORATION, Plaintiff-Respondent-Petitioner,†

v.

The STATE of Wisconsin, Cathy S. Zeuske, in her capacity as the Treasurer of the State of Wisconsin; and the Public Service Commission of Wisconsin, Defendants-Appellants.

Supreme Court

*No. 95–0915. Oral argument April 8, 1997.—Decided May 13, 1997.*

(Also reported in 562 N.W.2d 594.)

†Motion for reconsideration denied June 2, 1997.

For the plaintiff-respondent-petitioner there were briefs by *Niles Berman, Janet L. Kelly* and *Wheeler, Van Sickel & Anderson, S.C.*, Madison and of counsel *Matthew H. Berns* and *MCI Telecommunications Corporation*, Chicago, IL and oral argument by *Niles Berman*.

For the defendants-appellants the cause was argued by *Steven Levine*, legal counsel with whom on the brief was *Steven M. Schur*, chief counsel for the Public Service Commission of Wisconsin.

¶ 1. DONALD W. STEINMETZ, J. The issue in this case is whether the Public Service Commission's (PSC) interpretation of Wis. Stat. § 196.85(2),[1] specifi-

---

[1] Wis. Stat. § 196.85(2) provides as follows:

The commission shall annually, within 90 days of the commencement of each fiscal year, calculate the total of its expenditures during the prior fiscal year which are reasonably attributable to the performance of its duties relating to public utilities, sewerage systems and power districts under this chapter and chs. 66, 184, and 198. . . . The commission shall deduct from this total all amounts chargeable to public utilities, sewerage systems and power districts under sub. (1) and s. 184.10(3). The commission shall assess a sum equal to the remainder plus 10% of the remainder to the public utilities and power districts in proportion to their respective **gross operating revenues during the last calendar**

312

cally its interpretation of the phrase "revenues. . .derived from intrastate operations," is a correct interpretation that is consistent with the language of the statute. We hold that the interpretation of the phrase "revenues. . .derived from intrastate operations" by the PSC to include revenues from interstate telecommunications originating in Wisconsin is a correct interpretation. We therefore affirm the court of appeals' decision reversing the circuit court.

¶ 2. The facts in this case are undisputed. MCI Telecommunications Corporation (MCI) is a public utility that provides telecommunications services. MCI provides interexchange (long-distance) services that originate in Wisconsin and terminate both within and outside the state.[2] MCI owns or leases equipment in

> **year, derived from intrastate operations**. If, at the time of payment, the prior year's expenditures made under this section exceeded the payment made under this section in the prior year, the commission shall charge the remainder to the public utilities and power districts in proportion to their gross operating revenues during the last calendar year. If, at the time of payment it is determined that the prior year's expenditures made under this section were less than the payment made under this section in the prior year, the commission shall credit the difference to the current year's payment. The assessment shall be paid within 30 days after the bill has been mailed to the public utilities and power districts. The bill constitutes notice of the assessment and demand of payment. Ninety percent of the payment shall be credited to the appropriation account under s. 20.155(1)(g) (emphasis added).

[2] A telecommunication that originates in one state and terminates in another is classified as an "interstate telecommunication" and is regulated exclusively by the Federal Communications Commission (FCC). *See* 47 U.S.C. §§ 153(e) and 152(a). A telecommunication that both originates and terminates in the same state is classified as an "intrastate telecommunication," the regulation of which is entrusted to the states. *See* 47 U.S.C. § 152 (b).

Wisconsin which it uses to provide these services. MCI also advertises to customers in Wisconsin.

¶ 3. The PSC is the state agency charged with regulating all utilities, including telecommunications utilities, in Wisconsin. Interexchange carriers such as MCI are subject to less regulation by the PSC than local exchange companies. However, as authorized by Wis. Stat. § 196.02(12), the PSC does participate in some activities involving nationwide utility issues. The PSC regularly participates in proceedings before various federal regulatory agencies including the FCC and FCC joint boards, the Federal Energy Regulatory Commission, and the Nuclear Regulatory Commission. The PSC is also a member of several national and regional regulatory associations to which it pays dues.

¶ 4. Wisconsin Statutes § 196.85(2) authorizes the PSC to annually assess public utilities to recover expenses reasonably related to the performance of its regulatory duties. This statute applies equally to utilities providing water, energy, and telecommunications services. To recover expenses not attributable to a specific utility, the PSC assesses each utility's share of the costs based on the utility's "gross operating revenues. . .derived from intrastate operations." Wis. Stat. § 196.85(2). This statute is referred to as Wisconsin's "remainder assessment" statute.

¶ 5. The PSC interprets the term "intrastate operations" from Wis. Stat. § 196.85(2) to include revenues from all telecommunications made from a telephone located within the state, regardless of whether the call terminates within or outside Wisconsin. Revenues generated from telecommunications made by MCI customers located outside Wisconsin to a telephone in Wisconsin are not included in the assessment. The PSC has interpreted the statute in this

manner since the breakup of the Bell System in 1984. The PSC re-examined and re-affirmed this interpretation in 1989.

¶ 6.   In 1984, MCI began doing intrastate business which was subject to regulation in the state of Wisconsin by the PSC. MCI brought this lawsuit challenging the PSC's interpretation of Wis. Stat. § 196.85(2) in September of 1993. It specifically challenged assessments from fiscal years 1990–91, 1991–92, and 1992–93. MCI argued that the statute is plain on its face and that "revenues. . .derived from intrastate operations" do not include revenues from telecommunications that originate in Wisconsin but terminate outside the state. In an order and decision dated December 22, 1994, the Circuit Court for Dane County, Judge George W. Northrup, granted plaintiff MCI's motion for summary judgment and denied the defendants' motion for summary judgment. The trial court found that the statute was unambiguous and that the term "intrastate operations" is synonymous with the term "intrastate telecommunications."

¶ 7.   The court of appeals reversed the trial court decision. It held that the statute is indeed ambiguous and that the PSC's interpretation of the statute is reasonable. *MCI Telecommunications Corp. v. State*, 203 Wis. 2d 392, 553 N.W.2d 284 (Ct. App. 1996). The court of appeals accorded great weight deference to the interpretation of the PSC. *Id.*

¶ 8.   Upon review, this court finds that the statutory provision at issue, Wis. Stat. § 196.85(2), is ambiguous. We also find that the interpretation by the PSC is correct no matter what level of deference this court applies. We therefore adopt the PSC's interpretation of this statute and affirm the court of appeals' decision.

¶ 9. The issue presented in this case is primarily one of statutory interpretation. In interpreting a statute, "[t]he threshold question must be whether or not the statute in question is ambiguous." *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995). "It is axiomatic in this state that a statutory provision is ambiguous if reasonable minds could differ as to its meaning." *Id.*, citing *Hauboldt v. Union Carbide Corp.*, 160 Wis. 2d 662, 684, 467 N.W.2d 508 (1991); *Girouard v. Jackson Circuit Ct.*, 155 Wis. 2d 148, 155, 454 N.W.2d 792 (1990). This court has recognized that "the ability of a statute to support more than one reasonable interpretation[ ] is the hallmark of ambiguity." *Id.*, citing *Girouard*, 155 Wis. 2d at 155.

¶ 10. If a court determines that a statute is ambiguous, then it "must look beyond the statute's language and examine the scope, history, context, subject matter, and purpose of the statute." *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 282, 548 N.W.2d 57 (1996) (citation omitted). "Furthermore, if an administrative agency has been charged with the statute's enforcement, a court may also look to the agency's interpretation." *Id.* (citation omitted). This court has noted that, in reviewing a statutory interpretation, "[a]n interpretation is unreasonable if it directly contravenes the words of the statute, it is clearly contrary to legislative intent or it is without rational basis." *Harnischfeger*, 196 Wis. 2d at 662. If not, then an interpretation is reasonable.

¶ 11. In this case, both parties offer different interpretations of the term "intrastate operations" from Wis. Stat. § 196.85(2). The term "intrastate operations" is not defined in the statute. The PSC takes the position that "revenues. . .derived from intrastate operations" include revenues from all sales of

interexchange telecommunications to customers within Wisconsin, regardless of the destination of the communication. This interpretation essentially equates the term "intrastate operations" with "intrastate sales." MCI, arguing that the statute is plain on its face and unambiguous, takes the position that the term "intrastate operations" cannot possibly include calls that originate in Wisconsin but terminate outside the state. MCI's interpretation equates "intrastate operations" with "intrastate telecommunications."

¶ 12.　We do not agree with MCI that the meaning of the statute is clear and unambiguous. As the court of appeals noted, "[s]ince the statute applies to utilities providing energy, telecommunications and water services, the phrase 'revenues. . .derived from intrastate operations' necessarily has a different meaning as applied to each type of public utility." *MCI*, 203 Wis. 2d at 402. Like the court of appeals, we also conclude that both the interpretation of the PSC and that of MCI are reasonable. Therefore, we find that Wis. Stat. § 196.85(2) is ambiguous. Because we find the statute ambiguous, we must look outside of the statute to ascertain the legislative intent in passing the statute. Among the sources we look to are the "scope, history, context, subject matter and purpose of the statute." *UFE*, 201 Wis. 2d at 282. This court may also look to the interpretation of the agency charged with enforcement of the statute. *See id.*

¶ 13.　In reviewing agency interpretations, this court has applied three distinct levels of deference: great weight, due weight, and de novo review. *See Harnischfeger*, 196 Wis. 2d at 659–60, citing *Jicha v. DILHR*, 169 Wis. 2d 284, 290, 485 N.W.2d 256 (1992).

In order to be accorded great weight deference, a court must conclude that: 1) the agency was charged by the legislature with the duty of administering the statute; 2) the interpretation of the agency is one of long-standing; 3) the agency employed its specialized knowledge or expertise in forming the interpretation; and 4) the agency's interpretation will provide consistency and uniformity in the application of the statute. *Id.*, citing *Lisney v. LIRC*, 171 Wis. 2d 499, 505, 493 N.W.2d 14 (1992).

¶ 14.   The parties disagree over what level of deference this court should apply to the PSC's interpretation of Wis. Stat. § 196.85(2). MCI argues that a de novo review is proper because this is an issue of first impression in that it is the first time that the PSC's interpretation has been challenged. At the very most, MCI argues, the agency interpretation should be accorded due weight deference because two of the criteria for great weight deference, the requirements of a long-standing interpretation and agency expertise, are not met. The PSC argues that great weight deference is appropriate because all four of the *Harnischfeger* criteria for this standard are met. We conclude that the PSC interpretation of the statute is correct under any level of deference and therefore decline to address further the proper level of deference in this case.

¶ 15.   Under any level of deference, the most important consideration is whether the interpretation furthers the legislative purpose. *See UFE*, 201 Wis. 2d at 281–82, 283–89; *Harnischfeger*, 193 Wis. 2d at 659–64. The purpose of Wis. Stat. § 196.85(2) is plain on its face. Its goal is to provide for the payment of expenses incurred by the PSC in regulating utilities by those utilities that generate the costs. *See Wisconsin*

318

*Telephone Co. v. Public Service Comm'n*, 206 Wis. 589, 590–92, 240 N.W. 411 (1932).[3] The interpretation of the PSC is consistent with this purpose. The costs paid by the utilities as required by the statute are directly proportional to the costs incurred by the agency in supervising and regulating those utilities. Additionally, under the PSC's interpretation, the revenues upon which MCI's assessment is based are derived from income generated from sales within the state of Wisconsin. An examination of several extrinsic sources helps to further demonstrate this point.

¶ 16.    A brief exploration of the legislative history of Wis. Stat. § 196.85(2), while not particularly revealing, is necessary to aid in the understanding of the term "revenues. . .derived from intrastate operations" and its use by the legislature. The Wisconsin legislature first passed Wis. Stat. § 196.85  on June 5, 1931. After passing the original statute, the legislature amended the statute on July 3, 1931, to add the words "power districts," among other things, to subsection (2). On January 29, 1932, the legislature amended Wis. Stat. § 196.85(2)  during a special session to add the phrase "derived from intrastate operations."

¶ 17.    Looking specifically at the phrase "derived from intrastate operations" in the drafting records reveals a few helpful facts. None of these facts, though, reveal the true intention of the legislature in adding the phrase "derived from intrastate operations."

---

[3] In *Wisconsin Telephone Co. v. Public Service Comm'n*, 206 Wis. 589, 240 N.W. 411 (1932), this court upheld Wis. Stat. § 196.85  against a constitutional challenge. The court found that the PSC was well within its authority in assessing utilities for the cost of regulating and supervising those utilities. *Id.* at 591.

¶ 18.    First, the bill to amend the statute was introduced in the special session because the provisions of the 1931 utility regulation act providing for charging back the cost of investigations to the utilities were held unconstitutional by a Dane County Circuit Court. Before the special session ended, the Wisconsin Supreme Court overruled the Dane County Circuit Court holding, thereby making the bill unnecessary. The legislature passed the bill nonetheless. Thus, the bill was not introduced during the special session specifically to add the phrase "derived from intrastate operations."

¶ 19.    Second, the phrase "derived from intrastate operations" first appeared in the fourth draft of the bill. The phrase was attached to the very last sentence of subsection (2). The phrase "derived from intrastate operations" did not show up in its current position in subsection (2) until the sixth draft of the bill when the phrase was penciled in the margin. The drafting records did not provide an explanation for the addition of the phrase "derived from intrastate operations" in subsection (2). The phrase remained in the two positions and the statute was amended as such on January 26, 1932, during the special session.

¶ 20.    One cannot deduce much from the little legislative history that exists. The scarce legislative history is useful, though, to dispute MCI's argument that if the legislature had intended the PSC's interpretation of the statute, it would not have called a special session and would not have added the phrase "derived from intrastate operations." The legislative history makes it clear that the bill to amend Wis. Stat. § 196.85 was not introduced for the purpose of adding the phrase "derived from intrastate operations" to subsection (2). Rather, the history makes it clear that the bill

was introduced to deal with a ruling made by a Dane County Circuit Court regarding provisions charging back the costs of investigations to the utilities.

¶ 21. MCI argues that the fact that the statute was passed in 1931 but not interpreted by the PSC in its current form until 1984 demonstrates inconsistency on the part of the PSC in its interpretations. However, we note that it is perfectly logical for the PSC to have embraced its current interpretation in 1984 when the nation's entire telecommunications system changed. "The explosion in new telecommunications technologies and the breakup of the AT&T monopoly has led a number of States to revise the taxes they impose on the telecommunications industry." *Goldberg v. Sweet*, 488 U.S. 252, 255 (1989).[4]

¶ 22. In determining the reasonableness of an interpretation of a statute, this court also looks to the scope of the statute, that is, "what does the statute encompass?" MCI argues that the PSC's interpretation of the statute is unreasonable because, while the PSC has regulatory authority over only intrastate telecommunications, it seeks to assess revenues received from interstate telecommunications. As noted by the court of appeals, "[t]he flaw in MCI's argument is that it equates 'intrastate operations' and 'intrastate telecommunications.' " *MCI*, 203 Wis. 2d at 404. To equate the two terms provides an absurd interpretation when the statute is applied to water or energy utilities. The scope of the statute is broad. It covers all utilities licensed in Wisconsin, not just telecommunications utilities. The PSC is acting within its authority in assessing the revenues generated from such interstate

---

[4] Although it is an assessment and not a tax at issue in this case, the logic behind this quotation applies equally to Wis. Stat. § 196.85 and its interpretation by the PSC.

telecommunications insofar as they are classified as "intrastate operations."[5]

¶ 23.   The United States Supreme Court has upheld similar challenges in cases analogous to, though not squarely on all fours with, this case. In the case of *Goldberg v. Sweet*, 488 U.S. 252 (1989), the Court held that a state in which an interstate telephone call originates or terminates has the requisite nexus to tax a customer's purchase of that call as long as the call is billed or charged to a service address, or paid by an addressee, within the taxing state.

¶ 24.   *Goldberg* indicates that the focus is on the site of the sale and not on the ultimate destination. Although not directly on point, this case does support the proposition that the sales of interstate telecommunications can legitimately be taxed or assessed by the state in which they originated. The PSC's interpretation of Wis. Stat. § 196.85(2) is consistent with the holding of this Supreme Court case.

¶ 25.   In sum, we adopt the PSC's interpretation of Wis. Stat. § 196.85(2) as the correct interpretation. Because we find Wis. Stat. § 196.85(2) to be ambiguous, this conclusion is supported through the study of extrinsic sources like the purpose, legislative history, and scope of the statute. We hold that the interpreta-

---

[5] In order for a state to have the authority to levy a tax or an assessment on an "interstate transaction," that activity must have a substantial nexus with the taxing state. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977). In this case, MCI does not deny Wisconsin's substantial nexus to the in-state calls that are assessed. In fact, at oral argument in this case, the attorney for MCI stated that this case presented no constitutional issues to this court. Consequently, we do not address any potential "nexus" or other constitutional problem in this opinion.

tion of the phrase "revenues. . .derived from intrastate operations" by the PSC to include revenue from interstate telecommunications originating in Wisconsin is a correct interpretation. Additionally, because we embrace the PSC's interpretation as the proper one under any standard of review, we decline to address the proper level of deference to be applied in this case.

¶ 26. For the foregoing reasons, we affirm the court of appeals' decision reversing the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed.