James KNIGHT, Plaintiff-Appellant,†

v.

LABOR & INDUSTRY REVIEW COMMISSION of the Department of Industry, Labor and Human Relations, and The Prudential Insurance Company of America, Defendants-Respondents.

Court of Appeals

*No. 97–1606. Submitted on briefs February 6, 1998.—Decided May 13, 1998.*

(Also reported in 582 N.W.2d 448.)

† Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark E. Larson* of *Gutglass, Erickson & Bonville, S.C.* of Milwaukee.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Nadim Sahar*, assistant attorney general. On behalf of the defendant-respondent The Prudential Insurance Company of America, the cause was submitted on the brief of *David B. Kern* and *Peggy C. Nowicki* of *Quarles & Brady* of Milwaukee.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

SNYDER, P.J.   James Knight appeals from a circuit court order affirming a decision by the Labor and Industry Review Commission (LIRC) that the Prudential Insurance Company of America did not discriminate against him on the basis of his conviction record in violation of the Wisconsin Fair Employment Act (WFEA). LIRC found, inter alia, that Knight was not qualified for the position of district agent because his felony conviction statutorily disqualified him from registration with the National Association of Securities Dealers (NASD). The circuit court affirmed LIRC's decision.

Knight now appeals this determination and claims that: (1) Prudential's refusal to consider his application because of his conviction record violated WFEA; (2) Prudential failed to prove that NASD registration was a job requirement; (3) under WFEA, Prudential was required to allow Knight to pursue an alternate registration process (an MC–400 application) for NASD registration; and (4) the trial court erred when it allowed Prudential to raise "issues that had not been part of its original employment decision regarding Mr. Knight." We conclude that LIRC's finding that Knight was not qualified for the position is supported by substantial evidence, and that LIRC's further conclusion that WFEA does not require that an employer accommodate a conviction record was proper. Consequently, we affirm.

In October 1991, Knight applied for a position as a district agent with Prudential. At that time, Knight was licensed through the state Office of the Commissioner of Insurance to sell life, casualty, property, accident and health insurance and was working for a

competitor of Prudential. He did not have a securities license but could refer clients interested in such products to agents within the company who were licensed to handle securities.

Under federal law, financial companies which sell securities registered with the Securities and Exchange Commission (SEC) are required to be members of NASD. In addition, NASD requires that all employees who participate in a company's registered securities business must be individually registered with NASD. Under NASD registration requirements, an individual seeking registration must submit a U–4 form. Information supplied on the U–4 form allows NASD to determine whether the applicant is qualified to handle registered securities. Specifically, there are certain statutory disqualifiers defined by federal law; one such statutory disqualification is a felony conviction within a ten-year period prior to the NASD application.[1]

If an applicant is statutorily disqualified for any reason, the applicant can only become registered with NASD if the employer is willing to submit an MC–400 application form on behalf of the applicant. The filing of this form requires that the employer pay a $1000 processing fee. In addition, the employer must: (1) describe any steps it took prior to the MC–400 form filing to investigate the activities of the applicant, (2) state the reasons for its belief that the applicant should be permitted to become NASD registered notwithstanding the statutory disqualification, and (3) give a

---

[1] Until the enactment of the Securities Acts Amendments of 1990, a felony conviction operated as a statutory disqualification only if the felony conviction related to financial or securities-related matters. Under the 1990 amendments, however, any felony conviction, regardless of the nature of the crime, constitutes a statutory disqualification.

detailed explanation of the special measures it will take to supervise the securities-related activities of the statutorily disqualified applicant, above and beyond the supervision that it normally provides to its securities-licensed employees. Finally, the MC–400 application form requires the employer to do all within its power to diligently supervise the activities of the prospective employee. This supervision must include daily review of the applicant's securities-related work.

If a company decides to hire a statutorily disqualified applicant whose registration has been approved through the MC–400 process, the company is required to supervise the individual "in strict accordance with the description set forth in the individual's MC–400 application." If the company fails to discharge this duty of supervision, NASD may impose fines on the company or suspend or terminate the company's membership in NASD. Additionally, NASD may impose fines of up to $50,000 on the statutorily disqualified individual's supervisor, for which amount the supervisor is personally liable. Finally, NASD can also suspend or terminate the supervisor's NASD registration.

In this case, Prudential was a member of NASD when Knight applied for the district agent position. At that time, Prudential employed approximately 29,000 district agents who were responsible for selling registered securities and other investment products. The district agents were expected to work independently and with very little supervision. Because they were responsible for selling registered securities, Prudential had a policy of requiring all of its district agents to become personally registered with NASD.

After Knight applied for the district agent position he was interviewed by Edward Newman. At that inter-

145

view, Knight completed an application form on which he disclosed that he had been convicted on May 23, 1988, of driving someone for the delivery of a controlled substance, a felony conviction.

Later in the application process, in accordance with NASD registration procedures, Knight was required to fill out a U–4 form. In response to questions on the U–4 form, Knight again disclosed that he had been convicted of the aforementioned felony in 1988. Newman, after reviewing Knight's U–4 form and consulting with company executives, decided that he could not proceed with Knight's application and informed Knight of that decision.

The decision to terminate the processing of Knight's application was based upon a company policy of rejecting applicants who were subject to statutory disqualification on the basis of a felony conviction record. Although Prudential had submitted MC–400 applications on behalf of company employees in the past so that they could obtain NASD registration, it had never done so for a job applicant. Prudential's policy of rejecting statutorily disqualified applicants resulted from supervision problems the company had experienced with regard to NASD registered individuals who were approved through the MC–400 process. On several occasions, NASD informed Prudential that it considered Prudential's supervision of statutorily disqualified employees to be inadequate.

In response to Prudential's decision not to hire him, Knight filed a complaint with the Wisconsin Department of Industry, Labor and Human Relations alleging that Prudential had discriminated against him on the basis of his conviction record and that this was in violation of WFEA. After a hearing on the merits of the case, an administrative law judge (ALJ)

concluded that Prudential had not discriminated against Knight on the basis of his conviction record because Knight was not qualified for the position due to his statutory disqualification. She further found that under WFEA, an employer is not required to accommodate a prospective applicant's conviction record. Finally, she found that the circumstances of Knight's felony conviction were "substantially related" to the circumstances of the district agent position. *See* § 111.335(1)(c)1, STATS. Thus, for all of these reasons, Prudential's decision not to offer Knight employment on the basis of his conviction record did not constitute discrimination under WFEA.

Knight filed an administrative appeal with LIRC which affirmed the decision of the ALJ.[2] Knight then petitioned the circuit court for judicial review of LIRC's decision. The circuit court affirmed the LIRC order, and Knight now appeals.

## Standard of Review

On appeal, we substantively review LIRC's decision and not that of the circuit court. *See Johnson v. LIRC*, 200 Wis. 2d 715, 721, 547 N.W.2d 783, 785 (Ct. App. 1996). Our standard of review for agency decisions depends upon whether the issues presented are questions of law or questions of fact. If the issue presented is a question of law, including a question of statutory interpretation, we apply one of three levels of deference to the agency conclusion: "great weight," "due weight" or "de novo." *See Sauk County v. WERC*,

---

[2] LIRC's decision affirmed the decision of the ALJ in all respects and adopted the ALJ's findings and conclusions as its own.

165 Wis. 2d 406, 413–14, 477 N.W.2d 267, 270–71 (1991).

■

The "great weight" standard is the highest level of deference given to an agency conclusion of law or statutory interpretation. *See id.* at 413, 477 N.W.2d at 270. This level of deference is accorded to an agency conclusion when the following four elements are met: (1) the agency is responsible for administering the statute, (2) the agency conclusion or interpretation is long standing, (3) the agency employed its specialized knowledge or expertise in forming the conclusion or interpretation, and (4) the agency interpretation provides consistency and uniformity in the application of the statute. *See MCI Telecommunications Corp. v. State,* 209 Wis. 2d 310, 318, 562 N.W.2d 594, 598 (1997). Under this standard, a reviewing court must uphold the agency interpretation if it is reasonable and if it is not contrary to the clear meaning of the statute. *See Currie v. DILHR,* 210 Wis. 2d 380, 388, 565 N.W.2d 253, 257 (Ct. App. 1997).

■

The "due weight" or "great bearing" standard is the second highest level of deference given to an agency conclusion of law or statutory interpretation. *See Sauk County,* 165 Wis. 2d at 413, 477 N.W.2d at 270. This level of deference is used if the agency interpretation is "very nearly" one of first impression. *See id.* at 413–14, 477 N.W.2d at 270. Under the due weight standard, "[W]e will not overturn a reasonable agency decision that furthers the purpose of the statute unless we determine that there is a more reasonable interpretation under the applicable facts than that made by the agency." *Currie,* 210 Wis. 2d at 388, 565 N.W.2d at 257.

Finally, the "de novo" standard is the least deferential. *See Sauk County*, 165 Wis. 2d at 414, 477 N.W.2d at 270–71. It is used if the agency conclusion of law or interpretation is one of first impression. *See id.* at 414, 477 N.W.2d at 271. No weight is given to the agency interpretation when this standard is employed. *See id.*

Additionally, if the issue presented concerns a question of fact, the "substantial evidence" standard of review is employed. *See Hamilton v. DILHR*, 94 Wis. 2d 611, 617, 288 N.W.2d 857, 860 (1980); *see also Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979). Pursuant to § 227.57(6), STATS.,[3] agency findings of fact will be affirmed if they are supported by substantial evidence. *See Hamilton*, 94 Wis. 2d at 617, 288 N.W.2d at 860. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bucyrus-Erie*, 90 Wis. 2d at 418, 280 N.W.2d at 147 (quoted source omitted). Therefore, an agency conclusion of fact will not be set aside unless it is found that such a conclusion could not have been reached by a reasonable person acting reasonably. *See id.* Generally, this court cannot evaluate the credibility or weight of the evidence on any finding of fact. *See id.* Instead, the reviewing court must examine the record for substan-

---

[3] Section 227.57(6), STATS., provides:

> If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.

tial evidence which supports the agency's conclusion. *See Currie*, 210 Wis. 2d at 387, 565 N.W.2d at 257.

The application of a statute or rule to a set of facts is a question of law; the general rule is that we are not bound by an agency's conclusions of law. *See Phillips v. Wisconsin Personnel Comm'n,* 167 Wis. 2d 205, 215, 482 N.W.2d 121, 124 (Ct. App. 1992). However, when the agency is charged by the legislature with the duty of applying the statute being interpreted, its interpretation is entitled to great weight. *See id.* at 215, 482 N.W.2d at 125. WFEA is administered and enforced by the Department of Industry, Labor and Human Relations. *See Kozich v. Employe Trust Funds Bd.,* 203 Wis. 2d 363, 370, 553 N.W.2d 830, 833 (Ct. App. 1996). We conclude that great deference should be afforded LIRC's decision as it is the commission charged with the interpretation and application of WFEA.

## Analysis

### 1. Establishment of a Prima Facie Case

Knight first contends that he established a prima facie case of employment discrimination on the basis of his conviction record under WFEA, § 111.322(1), STATS. In order to establish a prima facie case of employment discrimination under WFEA, a complainant must prove that: (1) he or she was a member of a protected class under the statute, (2) he or she was discharged, (3) *the person was qualified for the position,* and (4) either he or she was replaced by someone not within the protected class or that others not in the protected class were treated more favorably. *See Puetz Motor*

150

*Sales, Inc. v. LIRC*, 126 Wis. 2d 168, 173, 376 N.W.2d 372, 374–75 (Ct. App. 1985).

The establishment of a prima facie case "creates a presumption that the employer unlawfully discriminated against the employee." *Currie*, 210 Wis. 2d at 390, 565 N.W.2d at 258 (quoted source omitted). The burden then shifts to the employer to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the action. *See Puetz*, 126 Wis. 2d at 172, 376 N.W.2d at 374. To rebut this presumption, the employer carries only a burden of production, not the burden of ultimate persuasion. *See Currie*, 210 Wis. 2d at 393, 565 N.W.2d at 259. In all cases, the "complainant continues to bear the burden of proof on the ultimate issue of discrimination." *Id.*

In this case, LIRC concluded that Knight did not establish a prima facie case of discrimination because he did not demonstrate the third element outlined above—he "failed to show that he was qualified for the district agent position." In other words, Knight failed to show that he possessed the minimum qualifications for the job. *See Puetz*, 126 Wis. 2d at 174, 376 N.W.2d at 375. The ALJ and LIRC determined that Knight's conviction record subjected him to a statutory disqualification from registration with NASD.

Whether a person is "qualified" for a position is a question of fact. *See id.* Therefore, we will affirm the agency conclusion if it is supported by substantial evidence. *See Hamilton*, 94 Wis. 2d at 617, 288 N.W.2d at 860. Under federal law, all companies which sell securities registered with the SEC must become members of NASD. In addition, all employees who participate in the sale of registered securities must be individually

151

registered with NASD. Prudential requires all district agents to become registered with NASD because the sale of registered securities constitutes a significant portion of a district agent's work. Without such registration, a district agent would not be able to perform this job function.

It is undisputed that Knight's felony conviction statutorily disqualified him from NASD registration. Furthermore, LIRC agreed with the ALJ's finding that NASD registration was an essential job requirement of the district agent position because district agents were required to sell registered securities. Although a Prudential job description of the district agent position listed NASD registration as merely "desirable," LIRC found that this description was out of date. LIRC agreed with the ALJ that by the time Knight applied for employment in 1991, such registration was an absolute job requirement for all district agents. As a result, LIRC concluded that Knight was not qualified for the district agent position. We conclude that this finding is supported by substantial evidence and must be upheld.

Relying upon *Samens v. LIRC*, 117 Wis. 2d 646, 345 N.W.2d 432 (1984), Knight contends that he is only required to establish that he was rejected on an unlawful basis, after which the burden shifts to the employer to justify the rejection. This reliance is misplaced. In *Samens*, the supreme court held that LIRC utilized the proper common carrier standard when it determined that the employer's refusal to hire Samens was legitimate. *See id.* at 680, 345 N.W.2d at 447. The court further found that the agency's findings were supported by the facts of record. *See id. Samens* stands for the proposition that the burden of proof shifts to the employer after the complainant establishes a case of

discrimination. *See id.* at 664, 345 N.W.2d at 439. *Samens*, however, does not stand for the proposition that a complainant does not have to prove that he or she was qualified in order to establish a prima facie case.

In this case, because Knight did not establish his prima facie case of showing that he was minimally qualified for the position, the burden of proof never shifted to Prudential. Again, no presumption of discrimination is created until the complainant establishes a prima facie case. *See Puetz*, 126 Wis. 2d at 172, 376 N.W.2d at 374.

In a related argument, Knight asserts that Prudential bears the burden of proving, as an affirmative defense, that he was not qualified for the position. This argument has no merit. As previously discussed, Knight alone bears the burden of proving the elements of his prima facie case. *See id.* at 173, 376 N.W.2d at 374–75. In order to establish the third element, it is Knight who must prove that he is qualified for the position. *See id.*

Knight further argues that the statutory disqualification due to his conviction record is not an "absolute disqualification." While it is true that Prudential can take steps on Knight's behalf to overcome the statutory disqualification through the MC–400 process, the availability of this process does not make Knight "qualified." Although Knight offered the testimony of one witness who indicated that Knight might be successful in obtaining registration through the MC–400 process, this is based on speculation. Although it *might have been* possible for Knight to obtain registration, this does not make him qualified for the position. As the LIRC decision indicated, the fact that Knight was "not

absolutely barred" from registration does not translate into a finding that he was qualified for the position.

Knight's argument that Prudential violated a collective bargaining agreement with the International Union of Life Insurance Agents when it decided not to hire him also has no merit. This agreement states that an "[a]gent hired must, as a condition of employment, become NASD registered within 120 days of the Agent's date of hire." Prudential's decision not to hire Knight does not implicate the collective bargaining agreement. This part of the agreement was meant to ensure that applicants *who are hired* become registered within a reasonable time period. Because Prudential did not offer Knight a position, the agreement does not create any duty on the part of Prudential to "wait and see" if Knight could become registered through the MC–400 process.

## 2. Duty to Accommodate

Knight next contends that WFEA imposes a duty upon employers to take affirmative steps to accommodate individuals with felony convictions. More specifically, he asserts that Prudential was required to pursue the MC–400 process on his behalf as part of the "hiring process." We are not persuaded.

▬▬▬ Whether WFEA imposes a duty upon employers to accommodate a job applicant's conviction record is a question of statutory interpretation. *Cf. American Motors Corp. v. DILHR*, 101 Wis. 2d 337, 353, 305 N.W.2d 62, 70 (1981). When faced with a question of statutory interpretation, the threshold question is whether the statute is ambiguous. *See MCI Telecommunications*, 209 Wis. 2d at 316, 562 N.W.2d at 597. A statute is ambiguous if it is susceptible to more than

one reasonable interpretation. *See id.* If the court finds that the statute is ambiguous, it must then "look beyond the statute's language and examine the scope, history, context, subject matter and purpose of the statute." *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 282, 548 N.W.2d 57, 60 (1996).

If a statute is ambiguous, and if an administrative agency has been charged with enforcement of the statute, this court may look to the agency interpretation. We then apply one of three levels of deference: great weight, due weight or de novo. *See Sauk County*, 165 Wis. 2d at 413–14, 477 N.W.2d at 270–71. In this case, the parties disagree as to what level of deference should be applied to LIRC's interpretation of WFEA. Knight argues that the de novo standard is appropriate, while Prudential argues that the agency's interpretation should be entitled to great weight. Because we conclude that the statute is not ambiguous and that LIRC's interpretation is correct under any level of deference, we need not further address the standard of review.

There is nothing in the language of WFEA which states that employers must take affirmative steps to accommodate individuals convicted of felonies. *See* § 111.335, Stats. As a result, LIRC correctly found that no such accommodation is required, regardless of whether Knight believes that such an accommodation would further the purpose and spirit of WFEA. *See American Motors*, 101 Wis. 2d at 369, 305 N.W.2d at 77.

In *American Motors*, the Wisconsin Supreme Court held that absent express language to the contrary, WFEA did not impose a duty upon employers to

155

accommodate an employee's religious practices. *See id.* At that time, WFEA did not provide for such an accommodation. Subsequently, the legislature amended WFEA to expressly require reasonable accommodation of *religious practices and handicaps. See* §§ 111.337, 111.34, STATS. However, no language was included that required an accommodation of criminal convictions. *American Motors* still stands for the proposition that no accommodation is required, absent express language to the contrary.

Requiring Prudential to pursue the MC–400 process on Knight's behalf is not part of the "employment process." The burdensome steps required by the MC–400 application, such as the payment of a $1000 processing fee, are not part of Prudential's normal hiring procedure. Prudential had never submitted an MC–400 application on behalf of a job applicant; the law does not require it do so here.

### 3. Substantially Related Claim

In a final claim, Knight contends that it was improper for LIRC to consider whether the circumstances of his conviction were "substantially related" to the circumstances of the district agent position under § 111.335(1)(b), STATS. LIRC's decision affirmed the ALJ's finding that the circumstances of Knight's conviction were substantially related to the circumstances of the position. As a result, LIRC held that Prudential did not impermissibly discriminate against Knight on this basis either. Although our determination that Knight failed to make a prima facie case of discrimination makes this issue moot, we agree that the implications of Knight's conviction for his involvement in a drug deal can be construed as substantially related to the circumstances of a position as a district agent. As

a district agent, Knight would have a significant amount of unsupervised time in making calls and would also have a fiduciary responsibility to his customers that would include handling sums of money.

Because we affirm the LIRC decision for the reasons previously discussed, we need not reach other arguments advanced by Prudential, such as Knight allegedly falsified his employment application, for denying relief to Knight. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (if a decision on one point disposes of an appeal, the court will not decide other issues raised).

*By the Court.*—Order affirmed.