UNITED AIRLINES, INC., Plaintiff-Appellant,†

v.

WISCONSIN DEPARTMENT OF REVENUE, Defendant-
Respondent.

Court of Appeals

*No. 98–2299. Submitted on briefs February 4, 1999.—Decided
April 15, 1999.*

(Also reported in 595 N.W.2d 49.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Joseph A. Pickart* of *Michael Best & Friedrich, LLP* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James Doyle*, attorney

general, and *Peter C. Anderson*, assistant attorney general.

Before Dykman, P.J., Roggensack and Deininger, JJ.

DYKMAN, P.J. United Airlines, Inc., appeals from an order denying its motion for summary judgment on the Department of Revenue's (DOR) assessment against it for additional ad valorem taxes and interest for the years 1992 through 1994. United challenges DOR's interpretation of § 76.07(4g)(b), STATS., which sets out the formula DOR is to use when making property tax assessments against air carrier companies.[1] In particular, United argues that it would be reasonable to interpret the language of § 76.07(4g)(b)11–13, as allowing DOR to include an air carrier's connecting-flight data when it calculates the air carrier's "tonnage factor." We disagree and affirm.

## BACKGROUND

The facts in this case are not in dispute. On May 31, 1996, DOR assessed additional ad valorem taxes and interest against United Airlines, an air carrier company under § 76.02(1), STATS., for the tax years 1992 through 1994. United appealed DOR's assess-

---

[1] The trial court issued a second order granting DOR's motion for summary judgment on United's claim that DOR's interpretation of the tax assessment formula violated the Commerce Clause. *See* U.S. CONST. art. I, § 8. United, however, has failed to brief this issue on appeal; therefore, we will not consider it further in this opinion. *See Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981) (stating that an issue raised but not briefed or argued is deemed abandoned).

411

ment to the Dane County Circuit Court on June 27, 1996, alleging that the assessment was not supported by the applicable statute. The applicable statute is § 76.07(4g)(b), STATS.

Section 76.07(4g)(b), STATS., contains the formulas DOR is to apply when assessing the property values of air carrier companies in Wisconsin. The formula requires DOR to calculate, assign weights to and then add together a "property factor," a "revenue factor" and a "tonnage factor." *See* § 76.07(4g)(b)1–16. This case only concerns the proper calculation of an air carrier's "tonnage factor," which is addressed in § 76.07(4g)(b)11–13:

> The department shall determine the property in this state of . . . air carrier companies . . . in the following manner:
>
> . . . .
>
> (b) *Air carrier companies.* For air carrier companies:
>
> . . . .
>
> 11. Determine the tons of revenue passengers and revenue cargo first received either as originating traffic or as connecting traffic in this state or finally discharged by the company in this state.
>
> 12. Determine the tons of revenue passengers and revenue cargo received or finally discharged at airports everywhere.
>
> 13. Divide the amount under subd. 11. by the amount under subd. 12.

DOR interprets this language to mean that the tons of revenue passengers and cargo first received or finally discharged by the carrier in this state (numerator) should be divided by the total tons of revenue passenger and cargo first received or finally discharged by the same carrier at airports everywhere (denomina-

tor). DOR would only include an air carrier's connecting-flight data if the passenger or item of cargo is first received by the air carrier as connecting traffic in Wisconsin; otherwise, it is excluded.

United, on the other hand, would calculate the tonnage factor by adding up all enplanements and deplanements, including all connecting flights that occur on that air carrier in Wisconsin (numerator), and then divide that amount by the total number of enplanements and deplanements, including all connecting flights, that occur on that air carrier at airports everywhere (denominator).

The distinction between these interpretations is best illustrated by the following examples.

Example 1: P's flight on United from Chicago to Madison. P flew out of Chicago to Milwaukee on United flight 101. Once P arrived in Milwaukee, he switched planes to connecting United flight 102, which took him to Madison.

DOR would calculate United's tonnage factor by counting P's deplanement in Madison (finally discharged by the air carrier in this state) in the numerator, and it would count P's enplanement in Chicago (first received by the air carrier at airports everywhere) and his deplanement in Madison (finally discharged by the air carrier at airports everywhere) in the denominator, for a ratio of one over two in Wisconsin.[2] DOR would ignore P's connecting deplanement and enplanement in Milwaukee, because he was

---

[2] It would be one over two for Illinois as well. There appears to be agreement between the two sides that the ratios from each state, when added together, equal one or one hundred percent. In this example, the ratios of each state (one over two in Wisconsin and one over two in Illinois) added together equal two over two.

413

neither first received nor finally discharged by United in that city.

United, on the other hand, would calculate its tonnage factor by counting P's connecting deplanement in Milwaukee (discharged by the air carrier in this state), his enplanement in Milwaukee (received by the air carrier in this state) and his deplanement in Madison (finally discharged by the air carrier in this state) in the numerator, and it would count P's enplanement in Chicago (received at airports everywhere), his connecting deplanement and enplanement in Milwaukee (received and discharged at airports everywhere), and his final deplanement in Madison (finally discharged at airports everywhere) in the denominator, for a ratio of three over four in Wisconsin.[3]

Example 2: P's flight on United from Atlanta to Milwaukee. P flew from Atlanta to Chicago on United flight 201. Once P arrived in Chicago, he boarded connecting United flight 202, which took him to Milwaukee.

DOR would calculate United's tonnage factor by counting P's deplanement in Milwaukee (finally discharged by air carrier in this state) in the numerator, and it would count P's enplanement in Atlanta (first received by air carrier at airports everywhere) and his deplanement in Milwaukee (finally discharged by air carrier at airports everywhere) in the denominator, for a ratio of one over two in Wisconsin.[4] DOR would ignore P's connecting enplanement and deplanement

---

[3] According to United, its ratio would be one over four for Illinois. The ratios of each state (three over four in Wisconsin and one over four in Illinois) added together would equal four over four.

[4] According to DOR, the tonnage factor ratio for Georgia would be one over two, and zero over two for Illinois. The ratios

in Chicago, because he was neither first received nor finally discharged by United in that city.

United, on the other hand, would calculate its tonnage factor by counting P's deplanement in Milwaukee (finally discharged by the air carrier in this state) in the numerator, and it would count P's enplanement in Atlanta (received at airports anywhere), P's deplanement in Chicago (discharged at airports everywhere), P's enplanement in Chicago (received at airports everywhere), and P's final deplanement in Milwaukee (discharged at airports everywhere) in the denominator, for a ratio of one over four in Wisconsin.[5]

Both United and DOR filed motions for summary judgment. United asserts that DOR erred in excluding United's connecting-flight data when calculating the air carrier's "tonnage factor" for 1992 through 1994. The trial court denied United's motion and granted DOR's motion. United appeals.

## STANDARD OF REVIEW

We review a trial court's grant of summary judgment de novo, applying the same methodology as the trial court, which is set out in § 802.08(2), STATS. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). That methodology has been so often stated and is so well understood that we need not repeat it here, except to note that summary

of each state (one over two in Wisconsin, zero over two in Illinois and one over two in Georgia) added together equal two over two.

[5] According to United, its tonnage factor ratio for Georgia would be one over four and two over four for Illinois. The ratios of each state (one over four in Wisconsin, two over four in Illinois and one over four in Georgia) added together equal four over four.

judgment is appropriate when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *See M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995).

██

Whether tonnage data from connecting flights should be excluded from the denominator of an air carrier's tonnage factor presents a question of statutory interpretation. In *Knight v. LIRC*, 220 Wis. 2d 137, 155, 582 N.W.2d 448, 456 (Ct. App.), *rev. denied*, 220 Wis. 2d 365, 585 N.W.2d 157 (1998), we noted:

> If a statute is ambiguous, and if an administrative agency has been charged with enforcement of the statute, this court may look to the agency interpretation. We then apply one of three levels of deference: great weight, due weight or de novo.

United argues that we should review DOR's interpretation of § 76.04(4g)(b), STATS., de novo, while DOR contends that we should accord its interpretation great weight. As we did in *Knight*, we conclude that the statute is unambiguous, and that DOR's interpretation is correct under any level of deference. We therefore will not address our standard of review any further. *See Knight*, 220 Wis. 2d at 155, 582 N.W.2d at 456.

### DISCUSSION

United contends that § 76.07(4g)(b)11–13, STATS., reasonably could be interpreted to include connecting-flight data in the denominator (i.e., United's interpretation), or it reasonably could be interpreted to exclude connecting-flight data from the denominator (i.e., DOR's interpretation). Therefore, United argues that the statute is ambiguous. We disagree.

416

In determining whether these proposed interpretations are reasonable, we start with two common-sense rules that guide our reading of the statute. First, all passengers and cargo boarding a plane eventually exit that plane, which means that for every enplanement counted in the denominator there also must be a corresponding deplanement counted in the denominator.[6] Second, enplanements and deplanements that occur in Wisconsin also fit the definition of "airports everywhere," which means that an enplanement or deplanement counted in the numerator is also counted in the denominator. With these in mind, we turn to the parties' interpretations of the statute to determine which, if either, is reasonable.

If we were to accept United's interpretation and count connecting-flight data in the numerator and in the denominator, then we would recount a passenger (or an item of cargo) when he or she deplanes his or her original flight and when he or she enplanes his or her connecting flight(s). However, according to § 76.07(4g)(b)11 and 12, STATS., the only deplanements that may be included in either the numerator or the denominator are those in which the passenger is "finally discharged" (i.e. reached its destination point for the purposes of air travel on that air carrier). This means that in order to find United's interpretation reasonable, we would either have to: (1) ignore the express language of the statute and include connecting flight deplanements as well as final deplanements; or (2)

---

[6] The examples provided by United suggest that they would count all enplanements and all corresponding deplanements in the denominator. DOR has not provided any examples, but its interpretation indicates that it too would require a deplanement for every enplanement. Therefore, we conclude that this is a principle that both sides accept.

417

count connecting enplanements but not connecting deplanements, which would violate the rule that for every enplanement counted in the denominator there also must be a corresponding deplanement counted. We decline to do either.

United points out that if the numerator and the denominator of the equation are to include the same variables, and connecting flights are supposed to be included in § 76.07(4g)(b)11, STATS., then the connecting-flight data should be included in the denominator as well. We believe that United is misreading the language of the statute.

The language of § 76.07(4g)(b)11, STATS., states that DOR is to count the passengers and cargo *"first received* either as originating traffic or as connecting traffic in this state or *finally discharged* by the company in this state."* We read this to mean that connecting passengers or cargo should only be included when they are "first received" by the air carrier in this state. When passengers (or cargo) board an airplane at their place of origin, they are "first received" by that air carrier at that point. They cannot again be "first received" when they make a connecting flight on that same air carrier. In short, a passenger or an item of cargo can only be "first received" by an air carrier once. This is a principle that DOR adopts.

To illustrate, we use our first example of P flying from Chicago to Madison through Milwaukee. DOR would contend that P is "first received" by United as originating traffic when he leaves Chicago, but he is not "first received" by United again when he boards his connecting flight in Milwaukee. Therefore, DOR would count P once in the numerator (finally discharged by United in Madison) and twice in the denominator (first received by United as originating traffic in Chicago and

418

finally discharged by United in Madison). We conclude that this is a reasonable interpretation of the statutory language.

United, on the other hand, would say that P is first received in Chicago as originating traffic and in Milwaukee as connecting traffic; therefore, its tonnage factor ratio would be two over four in Wisconsin. This, however, runs contrary to logic, because a passenger cannot be first received by an air carrier as both originating *and* connecting traffic.

We now illustrate the "first received . . . as connecting traffic" language in § 76.07(4g)(b)11, STATS. P arranges to fly United from Chicago to Milwaukee, where he will then board a Northwest Airlines flight from Milwaukee to Madison. For the purpose of calculating United's tonnage factor ratio in Wisconsin, DOR would count P's deplanement in Milwaukee (finally discharged by the air carrier in this state) in the numerator, and it would count P's enplanement in Chicago (first received by the air carrier at airports everywhere) and his deplanement in Milwaukee (finally discharged by the air carrier at airports everywhere) in the denominator, for a ratio of one over two in Wisconsin.[7]

For the purpose of calculating Northwest's tonnage factor ratio in Wisconsin, DOR would count P's enplanement in Milwaukee (first received by air carrier as connecting traffic in this state) and his deplanement in Madison (finally discharged by air carrier in this state) in both the numerator and the

[7] According to DOR, United's tonnage factor in Illinois also would be one over two. The ratios of each state (one over two in Wisconsin and one over two in Illinois) added together equal two over two.

denominator (same), for a ratio of two over two in Wisconsin.[8]

We cannot readily determine how United would calculate the various tonnage factors in this scenario. It would either use the same methodology as DOR or it would not. If it did not use the same methodology, we assume it would calculate United's tonnage factor ratio in Wisconsin to be one (P's final deplanement in Milwaukee) over four (P's original enplanement on United in Chicago, P's final deplanement from United in Milwaukee, P's connecting enplanement on Northwest in Milwaukee, and P's final deplanement from Northwest in Madison), and it would calculate Northwest's tonnage factor ratio to be two (P's connecting enplanement in Milwaukee and P's final deplanement in Madison) over four (P's original enplanement on United in Chicago, P's final deplanement from United in Milwaukee, P's connecting enplanement on Northwest in Milwaukee, and P's final deplanement from Northwest in Madison).

The latter interpretation, however, would be unreasonable because it means that an air carrier's tax assessment would be determined, in part, on another air carrier's business. We believe this runs contrary to the purpose of the statute, which is to assess property taxes against an air carrier based on that air carrier's property in this state. *See* § 76.07(4g), STATS. We therefore reject this interpretation of the statute as unreasonable.[9]

---

[8] According to DOR, Northwest's tonnage factor in Illinois would be zero over zero. The ratios of each state (two over two in Wisconsin and zero over zero in Illinois) added together equal two over two.

[9] United appears to support this interpretation when it argues that DOR improperly adds the term "by the company" to

United next interprets the language in § 76.07(4g)(b)12, STATS., as saying that all enplanements, including when a passenger or an item of cargo boards a connecting flight on the same air carrier, should be counted in the denominator as passengers or cargo "received." In contrast, DOR interprets the language as saying that the only enplanements counted in the denominator are those in which passengers or cargo are "first received" by the air carrier at airports everywhere. United appears to suggest that these are both reasonable interpretations. We again disagree.

As we stated earlier, for every enplanement in the denominator there must be a deplanement in the denominator. However, according to the language in § 76.07(4g)(b)12, STATS., only a passenger's final discharge or deplanement from an air carrier is to be included in the denominator. DOR reconciles these principles by only including those enplanements and deplanements in the denominator in which a passenger or an item of cargo is first received or finally discharged at airports everywhere. United, in contrast, would have DOR either count all enplanements and deplanements, which would violate the express language stating that only final deplanements should be counted, or it would have DOR count enplanements without counting deplanements, which would violate the principle that for every enplanement counted in the denominator there must be a corresponding deplanement. We have already held that we decline to do either.

the language of § 76.07(4g)(b)12, STATS., when it determines an air carrier's total tonnage. It appears that United believes that the denominator should contain all enplanements and deplanements of all air carriers. We reject this interpretation.

While § 76.07(4g)(b)11–13, STATS., is not artfully drafted, it is not ambiguous. In order for it to be ambiguous, it must be subject to at least two reasonable interpretations. We conclude that there is only one reasonable interpretation, and it is the interpretation offered by DOR. It interprets the statute in a manner consistent with the statutory language and the common-sense principles set out earlier in this opinion. United's interpretation, on the other hand, would have us ignore the statutory language or violate these common-sense principles, which we cannot do.[10]

United raises several other arguments why this court should reject DOR's interpretation. However, we reject each of these arguments. First, United argues that if Milwaukee were to become a major hub for an air carrier, DOR's method of calculating the tonnage factor would ignore "economic reality," presumably because connecting passengers and cargo would not be counted and the State would lose a significant amount of tax revenue. However, we decline to interpret a statute based on facts that are not in the record.

Second, United argues that if it is required to report data on revenue traffic only upon receipt and final discharge, it would have to discern each passenger's intent so that it could properly determine the passenger's "final destination." We reject this argument as well. The air carrier can inquire as to the final destination when travel arrangements are made.

Finally, United contends that DOR's interpretation and application of the tonnage factor undermines

---

[10] United argues that if there is any ambiguity in a tax statute, that ambiguity must be construed in favor of the taxpayer. *See DOR v. Horne Directory*, 105 Wis. 2d 52, 57, 312 N.W.2d 820, 823 (1981). We need not address this argument because we have concluded that the statute is not ambiguous.

what it considers to be valid "apportionment factors," such as: (1) apportionment factors should be simple to apply, be readily understandable, and require minimal calculation; (2) apportionment factors should be confined to those that can be clearly and uniformly interpreted and are not subject to any significant degree of estimation by the taxpayer; (3) apportionment factors should consist of raw data that is readily available from the taxpayer's records and apportionment factors should be based upon data that are not themselves allocations; and (4) the costs of compliance to the taxpayer and of administration to the government should be weighed in the selection of appropriate factors.

Three of the apportionment factors that United cites are statements by Jerry V. Smith, who is the chief of the utility taxes section of the Wisconsin Department of Revenue, about what he believes are valid factors; they are not legal authority.[11] Even if these were based on legal authority, we are satisfied that they are all met. Based on our discussion above, the formula that DOR utilizes is straightforward, and it can uniformly be interpreted and applied. United has not provided us with any evidence of how it or any other air carrier does not have access to the data that DOR utilizes when making its tonnage factor assessment. We cannot believe that air carriers do not keep track of when passengers (or cargo) board its planes and when they exit its planes. Finally, United has not provided us with any specific evidence of how it is burdened by the costs of complying with the statute. We therefore reject this argument.

[11] The third factor is taken out of a hornbook. *See* J. JANATA, PROPERTY TAXATION 605–606 (2d ed. 1993).

423

## Conclusion

We conclude that DOR's interpretation of § 76.07(4g)(b)11–13, Stats., is the only reasonable interpretation offered in this case. DOR's interpretation is consistent with the express language of the statute, and United's interpretation is not. Accordingly, we affirm.

*By the Court.*—Order affirmed.