Ray MALLO and Wanda Mallo, Plaintiffs-
Appellants,

v.

WISCONSIN DEPARTMENT OF REVENUE, Defendant-
Respondent,

WISCONSIN FARM BUREAU FEDERATION, Farmers Edu-
cational and Cooperative Union of America, Wis-
consin Division, National Farmers Organization,
Wisconsin Agribusiness Council, Wisconsin Agri-
Service Association, Inc., Wisconsin Cattlemen's
Association Cooperative, Wisconsin Corn Growers
Association, Inc., Wisconsin Federation of Coop-
eratives, Wisconsin Pork Producers Association
Cooperative, Wisconsin Potato & Vegetable Grow-
ers Association, Inc., Wisconsin Soybean Associa-
tion, Inc., Wisconsin State Cranberry Growers
Association, and Howard D. Poulson, Intervening
Defendants-Respondents.

Supreme Court

*No. 00–3252. Oral argument April 11, 2002.—Decided
June 25, 2002.*

2002 WI 70

(Also reported in 645 N.W.2d 853.)

391

394

For the plaintiffs-appellants there were briefs by *Michael P. May, James E. Bartzen,* and *Boardman, Suhr, Curry & Field LLP,* Madison, and oral argument by *James E. Bartzen.*

For the defendant-respondent there was a brief by *John R. Evans,* chief counsel for the Wisconsin Department of Revenue, and *Daniel W. Hildebrand, Jon P. Axelrod, Bradley W. Raaths,* and *DeWitt Ross & Stevens S.C.,* Madison, and oral argument by *Daniel W. Hildebrand.*

For the intervening defendants-respondents there was a brief by *H. Dale Peterson, Sverre David Roang,* and *Stroud, Willink & Howard, LLC,* Madison, and oral argument by *Sverre David Roang.*

¶ 1. N. PATRICK CROOKS, J. This case is before the court on certification from the Court of Appeals, District IV, pursuant to Wis. Stat. § 809.61 (1999–2000).[1] The issue we address is whether the Department of Revenue (DOR) exceeded its authority under Wis. Stat. § 70.32(2r), when it promulgated Wis. Admin. Code § Tax 18.08 (current through Wis. Admin. Register No. 535, July 2000), providing for the valuation of agricultural land for taxation purposes based on its use-value, effective January 1, 2000. After examining the plain language of the statute, we conclude that § 70.32 is unambiguous and gives the DOR authority to promulgate this rule. We further conclude that the rule is consistent with the plain language of § 70.32. We, therefore, affirm the decision of the circuit court granting summary judgment in favor of the DOR and dismissing this action.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## I. FACTS

### A. Statutory and Administrative Background

¶ 2. We begin by examining the relevant statutes, administrative rules, and the history of the valuation of agricultural land.[2] In 1974, the Wisconsin Constitution, Article VIII, Section 1,[3] was amended to provide an exception from the uniform rule of taxation for agricultural land. *See* 1971 J. Res. 39, 1973 J. Res. 29, (vote April 2, 1974). The amendment added the following language: "Taxation of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property." Wis. Const., art. VIII, § 1. The

---

[2] " 'Agricultural land' means land, exclusive of buildings and improvements, that is devoted primarily to agricultural use, as defined by rule." Wis. Stat. § 70.32(2).

[3] SECTION 1. The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property with such classifications as to forests and minerals including or separate or severed from the land, as the legislature shall prescribe. *Taxation of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property.* Taxation of merchants' stock-in-trade, manufacturers' materials and finished products, and livestock need not be uniform with the taxation of real property and other personal property, but the taxation of all such merchants' stock-in-trade, manufacturers' materials and finished products and livestock shall be uniform, except that the legislature may provide that the value thereof shall be determined on an average basis. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided (emphasis added).

subsequent legislation and administrative rules putting this constitutional amendment into effect present the central issue before us today.

¶ 3. Prior to January 1, 1996, agricultural land was assessed the same as all real property, at its fair market value based on its highest and best use. Wis. Stat. § 70.32 (1993–1994)[4]. In 1995, the legislature enacted Wis. Stat. § 70.32(2r)[5], to change the manner of value assessment of agricultural land for taxation pur-

---

[4] Wisconsin Stat. § 70.32(1) (1993–1994) provides in relevant part: "Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale."

[5] (2r)(a) For the assessments as of January 1, 1996, and January 1, 1997, or until the farmland advisory council under s. 73.03(49) makes its recommendation, but not to extend beyond January 1, 2009, the assessed value of each parcel of agricultural land is the assessed value of that parcel as of January 1, 1995.

(b) For each year beginning with 1998 or upon completion of the farmland advisory council's recommendation and promulgation of rules and ending no later than December 31, 2008, the assessed value of the parcel shall be reduced as follows:

1. Subtract the value of the parcel as determined according to the income that is or could be generated from its rental for agricultural use, as determined by rule, from its assessed value as of January 1, 1996.

2. Multiply .1 by the number of years that the parcel has been assessed under this paragraph, including the current year.

3. Multiply the amount under subd. 1. by the decimal under subd. 2.

4. Subtract the amount under subd. 3. from the parcel's assessed value as of January 1, 1996.

397

poses from market-value assessment to use-value assessment. 1995 Wis. Act 27 § 3362h. Under market-value assessment, land is valued "at the full value which could ordinarily be obtained therefor at private sale." Wis. Stat. § 70.32(1) (1993–1994). Under use-value assessment, agricultural land is valued "according to the income that could be generated from its rental for agricultural use." Wis. Stat. § 70.32(2r)(c).

¶ 4. Section 70.32(2r) provides for the transition to use-value assessment to occur in three stages, as indicated in Wis. Stat. § 70.32(2r)(a), (b), and (c). During the first stage, otherwise known as the "freeze," 1996 and 1997 assessments were frozen at the 1995 assessed value. *See* § 70.32(2r)(a). The second stage, otherwise referred to as the phase-in or mixed-use assessment, was legislated to begin in 1998 "or upon completion of the farmland advisory council's recommendation and promulgation of rules and ending no later than December 31, 2008." § 70.32(2r)(b). The specific method of calculating assessments during the phase-in or mixed-use assessment is stated in § 70.32(2r)(b)1. through 4. The final stage, as provided in § 70.32(2r)(c), began "as of the January 1 after the valuation method under par. (b) no longer applies and for each assessment thereafter." During the final stage, and for all assessments thereafter, agricultural land is wholly assessed based on its use-value.

¶ 5. At the same time the legislature enacted Wis. Stat. § 70.32(2r), the legislature created the Farmland Advisory Council (hereinafter the "Council") under Wis.

---

(c) For the assessment as of the January 1 after the valuation method under par. (b) no longer applies and for each assessment thereafter, agricultural land shall be assessed according to the income that could be generated from its rental for agricultural use.

Stat. § 73.03(49).[6] 1995 Wis. Act 27 § 3439m. The legislature charged the Council with the responsibility of informing and advising the DOR regarding the implementation of use-value assessment.

[6] (49) To appoint a farmland advisory council that shall do the following:

(a) Advise the department of revenue on the supplement to the assessment manual's guidelines for assessing agricultural land, and on rules to implement use-value assessment of agricultural land and to reduce expansion of urban sprawl.

(c) Annually report to the legislature on the usefulness of use-value assessment as a way to preserve farmland and to reduce the conversion of farmland to other users.

(d) Recommend a method to adjust the shared revenue formula and other formulas one factor of which is equalized value to compensate counties, municipalities and school districts that are adversely affected by use-value assessment.

(dg) Calculate the federal land bank's 5–year average capitalization rate and per-acre values based on estimated income generated from rental for agricultural use.

(dm) Carry out its duties in cooperation with the strategic growth task force of the governor's land use council.

(e) Including the following members:

1. The secretary of revenue, who shall serve as chairperson.

2. An agribusiness person.

3. A person knowledgeable about agricultural lending practices.

4. An agricultural economist employed by the University of Wisconsin System.

5. A mayor of a city that has a population of more than 40,000.

6. An expert in the environment.

7. A nonagricultural business person.

8. A professor of urban studies.

9. A farmer.

Specifically, § 73.03(49)(a) provided that the purpose of the Council was to advise the DOR "on rules to implement use-value assessment of agricultural land and to reduce expansion of urban sprawl."

¶ 6. On October 1, 1997, pursuant to its authority to promulgate rules, the DOR adopted Wis. Admin. Code § Tax 18.04 through 18.08 (1997),[7] to implement the use-value assessment system. Following the statutory scheme in Wis. Stat. § 70.32(2r), 1996 and 1997 assessments were frozen pursuant to § 70.32(2r)(a) and Wis. Admin. Code § Tax 18.08. Then, based on Wis. Admin. Code §§ Tax 18.07 and Tax 18.08, the phase-in, or mixed-use assessment, began and assessments of agricultural land in 1998 and 1999 reflected a ten and twenty percent shift, respectively, toward use-value assessments.

¶ 7. On October 18, 1999, the Council, in its role as advisor to the DOR regarding the implementation of use-value assessments, recommended that the DOR implement rules to assess agricultural land at full use-value as of January 1, 2000.[8] Based on the Council's recommendation, the DOR used its authority under

---

[7] Wisconsin Admin. Code § Tax 18.04 states the purpose of the subchapter as "to provide definitions and procedures for the department and municipal assessors to classify certain real property as agricultural or other, and to value such property for property tax purposes, beginning in 1998." Administrative Code § Tax 18.05 states the relevant definitions, and § Tax 18.06 states the categories of agricultural land. Section Tax 18.07 establishes the method for assessing agricultural land based on use-value, and § Tax 18.08 established the phase-in as stated in Wis. Stat. § 70.32(2r)(b).

[8] In their brief, the intervening defendants detail the difficult economic conditions facing Wisconsin farmers that triggered the recommendation to implement full use-value assess-

Wis. Stat. § 227.24(1)[9] to promulgate an emergency

ment as of January 1, 2000. These facts are not essential to our statutory interpretation analysis, therefore, we find it unnecessary to repeat those facts here.

[9] 227.24 Emergency rules; exemptions. (1) PROMULGATION. (a) An agency may promulgate a rule as an emergency rule without complying with the notice, hearing and publication requirements under this chapter if preservation of the public peace, health, safety or welfare necessitates putting the rule into effect prior to the time it would take effect if the agency complied with the procedures.

(b) An agency acting under s. 186.235(21), 215.02(18) or 220.04 (8) may promulgate a rule without complying with the notice, hearing and publication procedures under this chapter.

(c) A rule promulgated under par. (a) takes effect upon publication in the official state newspaper or on any later date specified in the rule and, except as provided under sub. (2), remains in effect only for 150 days.

(d) A rule promulgated under par. (b) takes effect upon publication in the official state newspaper or on any later date specified in the rule and remains in effect for one year or until it is suspended or the proposed rule corresponding to it is objected to by the joint committee for review of administrative rules, whichever is sooner. If a rule under par. (b) is suspended or a proposed rule under s. 186.235(21), 215.02(18) or 220.04(8) is objected to by the joint committee for review of administrative rules, any person may complete any transaction entered into or committed to in reliance on that rule and shall have 45 days to discontinue other activity undertaken in reliance on that rule.

(e) An agency that promulgates a rule under this subsection shall do all of the following:

1. Prepare a plain language analysis of the rule in the format prescribed under s. 227.14(2) and print the plain language analysis with the rule when it is published.

2. Prepare a fiscal estimate of the rule in the format prescribed under s. 227.14(4) and mail the fiscal estimate to

401

rule to implement the Council's recommendation. The emergency rule amended Wis. Admin. Code § Tax 18.08 by creating § Tax 18.08(4), providing for the immediate implementation of use-value assessments, as of January 2000. Subsection (4) states in full: "Notwithstanding subs. (1), (2) and (3), in 2000 and thereafter, the assessment of each parcel of agricultural land shall be its use value, as determined under s. TAX 18.07(3)(b)." The emergency rule was published in the Wisconsin Administrative Register on December 14, 1999,[10] and took effect on the same date. The emergency rule expired 150 days after its effective date.

¶ 8. In the meantime, the DOR began the process of promulgating a permanent rule that would replace the emergency rule upon its expiration. The proposed permanent rule repeals all of Wis. Admin. Code § Tax 18.08 and replaces it with a new § Tax 18.08. The new rule states: "Beginning with the assessments as of January 1, 2000, the assessment of each parcel of agricultural land shall be its use-value, as determined

---

each member of the legislature not later than 10 days after the date on which the rule is published.

[10] Regarding the "Finding of Emergency," the Wisconsin Administrative Register stated, in part:

> On October 18, 1999, the Farmland Advisory Council recommended that agricultural land be assessed as of January 1, 2000 and thereafter according to value in agricultural use. Major Wisconsin farm organizations, among others, have petitioned the Department under s. 227.12, Stats., to promulgate an administrative rule implementing the Council's recommendation.

> Since the Department holds assessor schools in November and typically publishes the next years use-value guidelines prior to January 1 of that year, an emergency rule requiring assessment of each parcel of agricultural land according to its value in agricultural use. is necessary for the efficient and timely assessment of agricultural land as of January 1, 2000.

under s. Tax 18.07(3)(b)." Pursuant to Wis. Stat. § 227.19(2)[11], which provides for legislative review of proposed rules, the rule was sent to the presiding officers of the legislature on May 8, 2000. The rule was then referred to the Senate Committee on Economic Development, Housing and Government Operations on May 17, 2000, and to the Assembly Ways and Means Committee on May 22, 2000. Neither committee objected to the proposed rule. Wisconsin Admin. Code § Tax 18.08, was published in the Wisconsin Administrative Register on July 31, 2000, and it took effect on August 1, 2000.

## B. Procedural Background

¶ 9. On February 28, 2000, Ray and Wanda Mallo (hereinafter the Mallos) filed a lawsuit against the DOR in Dane County Circuit Court challenging the validity

---

[11] (2) NOTIFICATION OF LEGISLATURE. An agency shall submit a notice to the presiding officer of each house of the legislature when a proposed rule is in final draft form. The notice shall be submitted in triplicate and shall be accompanied by a report in the form specified under sub. (3). A notice received under this subsection on or after November 1 of an even-numbered year shall be considered received on the first day of the next regular session of the legislature. Each presiding officer shall, within 7 working days following the day on which the notice and report are received, refer them to one committee, which may be either a standing committee or a joint legislative committee created by law, except the joint committee for review of administrative rules. The agency shall submit to the revisor for publication in the register a statement that a proposed rule has been submitted to the presiding officer of each house of the legislature. Each presiding officer shall enter a similar statement in the journal of his or her house.

of the emergency rule under Wis. Stat. § 227.40(1).[12] Several individuals and organizations with an interest and stake in the case[13] (hereinafter collectively referred to as "intervening defendants") were allowed to intervene as defendants. The Mallos reside in Taylor County, where they own approximately 150 acres of farmland. In their complaint, the Mallos alleged that the DOR exceeded its authority in promulgating the emergency rule and eliminating eight years of the ten-year phase-in required by § 70.32(2r)(b). They argued that

[12] 227.40 Declaratory judgment proceedings. (1) Except as provided in sub. (2), the exclusive means of judicial review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court for Dane County. The officer, board, commission or other agency whose rule is involved shall be the party defendant. The summons in such action shall be served as provided in s. 801.11(3) and by delivering a copy to such officer or to the secretary or clerk of the agency where composed of more than one person or to any member of such agency. The court shall render a declaratory judgment in such action only when it appears from the complaint and the supporting evidence that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff. A declaratory judgment may be rendered whether or not the plaintiff has first requested the agency to pass upon the validity of the rule in question.

[13] Wisconsin Farm Bureau Federation Cooperative, Farmers Educational and Cooperative Union of America, Wisconsin Division, National Farmers Organization, Wisconsin Agribusiness Council, Wisconsin Agri-Service Association, Inc., Wisconsin Cattlemen's Association Cooperative, Wisconsin Corn Growers Association, Inc., Wisconsin Federation of Cooperatives, Wisconsin Pork Producers Association Cooperative, Wisconsin Potato & Vegetable Growers Association, Inc., Wisconsin Soybean Association, Inc., Wisconsin State Cranberry Growers Association, and Howard D. Poulson.

the emergency rule would increase their real property taxes in 2000 by approximately $0.28 per acre.

¶ 10. On March 21, 2000, the Mallos moved for a temporary injunction barring the DOR from enforcing the emergency rule. The circuit court, the Honorable Robert R. Pekowsky, denied the temporary injunction. The court, finding § 70.32(2r) ambiguous, reasoned that the DOR's, and the Council's, interpretation of the statute would be entitled to due weight deference; therefore, the Mallos failed to establish a reasonable probability of success on the merits.

¶ 11. While the Mallo's lawsuit challenging the emergency rule was pending, the DOR enacted the permanent rule. The Mallos then amended their complaint to incorporate a challenge to the permanent rule, asking the court to declare as a matter of law that both the emergency rule and the permanent rule were invalid. Both the Mallos and the DOR subsequently moved for summary judgment. The circuit court, the Honorable Daniel L. LaRocque, Reserve Judge, denied the Mallos' motion and granted summary judgment in favor of the DOR. The court, in dismissing the Mallos' action, stated:

> The issue in this case is legislative intent. This court agrees with the Department's contention that the promulgation of the permanent or final rule is evidence of the legislature's intent. Pursuant to the process required by ch. 227, Stats., the legislature ratified the promulgation of the emergency rule by promulgating the permanent rule. The latter was assigned to the Senate Committee on Economic Development, Housing and Government Operations on May 17, 2000, and to the Assembly Ways and Means Committee on May 22, 2000. Neither objected to the permanent rule. . . . The simultaneous progression of this lawsuit with the legislative actions adopting the permenent [sic] rule is a

> sufficient demonstration of legislative intent. This court therefore concludes that any ambiguities in the statutory scheme have been resolved in favor of the Department's interpretation.

(Footnote omitted).

¶ 12. The Mallos appealed the circuit court's order, and the Court of Appeals, District IV, certified the appeal to this court.

## II. STANDARD OF REVIEW

¶ 13. We review the circuit court's grant of summary judgment de novo, applying the same methodology as the circuit court, although benefiting from its analysis. *See* Wis. Stat. § 802.08(2); *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We do not find it necessary to repeat fully the oft-stated summary judgment methodology. Rather, we simply note that summary judgment is appropriate when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Willow Creek Ranch v. Town of Shelby,* 2000 WI 56, ¶ 13, 235 Wis. 2d 409, 611 N.W.2d 693.

¶ 14. The issue we address is whether Wis. Stat. § 70.32 granted the DOR authority to promulgate the emergency rule, and then the permanent rule, Wis. Admin. Code § Tax 18.08. If the DOR did not have authority to promulgate the rule, then it must be invalidated. "Resolving an alleged conflict between a statute and an interpretive rule requires statutory interpretation," which is a question of law that we review de novo, but benefiting from the circuit court's analysis. *Seider v. O'Connell,* 2000 WI 76, ¶ 26, 236 Wis. 2d 211, 612 N.W.2d 659.

¶ 15. An administrative agency has only those powers given to it by statutory authority. "No agency may promulgate a rule which conflicts with state law." Wis. Stat. § 227.10(2); *see also Plain v. Harder,* 268 Wis. 507, 511, 68 N.W.2d 47 (1955) ("A rule out of harmony with the statute is a mere nullity."). Accordingly, an administrative agency "may not issue a rule that is not expressly or impliedly authorized by the legislature." *Oneida County v. Converse,* 180 Wis. 2d 120, 125, 508 N.W.2d 416 (1993).

¶ 16. "If a statute is ambiguous, and if an administrative agency has been charged with enforcement of the statute, this court may look to the agency interpretation." *Knight v. LIRC,* 220 Wis. 2d 137, 155, 582 N.W.2d 448 (1998). In doing so, we apply one of three levels of deference: great weight, due weight, or de novo. *Id.* We note, however, that our first duty is to the legislature, not to the administrative agency. *Seider,* 2000 WI 76, ¶ 26. Even if we accord the agency's interpretation great weight deference, therefore, we would not uphold a rule that is contrary to the language of the statute. *Id.*

¶ 17. Here, the parties dispute what level of deference we should accord the DOR's interpretation of Wis. Stat. § 70.32(2r). The DOR and the intervening defendants contend that we should accord the DOR's and the Council's interpretations due weight deference because both have been charged by the legislature with interpreting the statute. In contrast, the Mallos argue that our review is de novo. We conclude that § 70.32(2r) is unambiguous, and that the DOR's interpretation, and that of the Council, is correct under any level of

407

deference.[14] We, therefore, find it unnecessary to address our standard of review any further. *See Knight,* 220 Wis. 2d at 155 (concluding that Wisconsin Fair Employment Act is unambiguous, therefore no need to further address the level of deference to be accorded to LIRC's interpretation of the statute); *United Airlines, Inc. v. DOR,* 226 Wis. 2d 409, 416, 595 N.W.2d 49 (Ct. App. 1999) (concluding that Wis. Stat. § 76.04(4g)(b) is unambiguous, therefore no need to further address the level of deference to be accorded to DOR's interpretation of the statute).

## III. DISCUSSION

¶ 18. We begin our review by examining the language of Wis. Stat. § 70.32(2r) to determine whether the statute itself clearly expresses the legislative intent regarding the subject of the rule. *See Grafft v. DNR,* 2000 WI App 187, ¶ 6, 238 Wis. 2d 750, 618 N.W.2d 897. "To determine whether an agency has exceeded its statutory authority in promulgating a rule, this court first examines the enabling statute." *Seider,* 2000 WI 76, ¶ 70. The goal of statutory interpretation is to give effect to the intent of the legislature. *Grafft,* 2000 WI

---

[14] We acknowledge that the circuit court apparently decided that the DOR's and the Council's interpretation would be entitled to due weight deference. Judge Pekowsky, in his April 14, 2000, order denying the Mallos' motion for a temporary injunction, based the decision partially on "the likelihood that the Department's interpretation of the statute and the Farmland Advisory Council's recommendation will be entitled to due weight deference." Furthermore, in the circuit court's October 30, 2000, opinion, Judge LaRocque concluded that "any ambiguities in the statutory scheme have been resolved in favor of the Department's interpretation."

App 187, ¶ 5. We first look to the plain language of the statute and if it is clear and unambiguous, we simply apply the language to the facts at hand. *Landis v. Physicians Ins. Co.,* 2001 WI 86, ¶ 14, 245 Wis. 2d 1, 628 N.W.2d 893. If the statute is ambiguous, however, we look to extrinsic factors, including legislative history, and the statute's scope, context and subject matter, to determine the intent of the legislature. *Id.* at ¶ 15. A statute is ambiguous if it is capable of being understood by a reasonable person in either of two senses. *Reyes v. Greatway Ins. Co.,* 227 Wis. 2d 357, 365, 597 N.W.2d 687 (1999). A statute is not rendered ambiguous, however, merely because two parties disagree as to its meaning. *Forest County v. Goode,* 219 Wis. 2d 654, 663, 579 N.W.2d 715 (1998).

¶ 19. By interpreting the enabling statute here, Wis. Stat. § 70.32(2r), we determine whether the legislature expressly or implicitly authorized the DOR to promulgate Wis. Admin. Code § Tax 18.08. *See Seider,* 2000 WI 76, ¶ 70. We first identify the elements of the enabling statute, and then match the promulgated rule against those elements. *Grafft,* 2000 WI App 187, ¶ 7 (citing *Wisconsin Hosp. Ass'n v. Natural Resources Bd.,* 156 Wis. 2d 688, 706, 457 N.W.2d 879 (Ct. App. 1990). "If the rule matches the statutory elements, then the statute expressly authorizes the rule." *Wisconsin Hosp. Ass'n,* 156 Wis. 2d at 706. We note, however, that it is not necessary for an enabling statute to "spell out every detail of a rule in order to expressly authorize it." *Grafft,* 2000 WI App 187, ¶ 7. "Accordingly, whether the exact words used in an administrative rule appear in the statute is not the question." *Wisconsin Hosp. Ass'n,* 156 Wis. 2d at 706.

¶ 20. At issue here is the language in Wis. Stat. § 70.32(2r), and whether it grants the DOR authority to promulgate the emergency rule and the permanent rule providing for assessment of agricultural land based on its use-value, beginning January 1, 2000. Section 70.32(2r) states in relevant part:

(a) For the assessments as of January 1, 1996, and January 1, 1997, *or until the farmland advisory council* under s. 73.03(49) *makes its recommendation, but not to extend beyond January 1, 2009,* the assessed value of each parcel of agricultural land is the assessed value of that parcel as of January 1, 1995.

(b) For each year beginning with 1998, *or upon completion of the farmland advisory council's recommendation and promulgation of rules and ending no later than December 31, 2008,* the assessed value of the parcel shall be reduced as follows:

. . . .

(c) For the assessment *as of the January 1 after the valuation method under par. (b) no longer applies* and for each assessment thereafter, agricultural land shall be assessed according to the income that could be generated from its rental for agricultural use.

(Emphasis added.)

¶ 21. The Mallos argue that Wis. Admin. Code § Tax 18.08 is invalid because it is contrary to the unambiguous language of the statute, and the DOR exceeded its authority in promulgating the rule. First, the Mallos claim that § Tax 18.08 is invalid because the rule eliminates eight years of the ten-year mandatory

410

phase-in under Wis. Stat. § 70.32(2r)(b). According to the Mallos, § 70.32(2r) is not ambiguous; it clearly provides for three defined steps for the transition from market-value assessment to use-value assessment. The first step, referred to as the freeze under § 70.32(2r)(a), began on January 1, 1996, and lasted until December 31, 1997. The second step, referred to as the phase-in under § 70.32(2r)(b), began in 1998, as required by the statute. The Mallos contend that under the language of the statute, the phase-in lasts for ten years and ends on December 31, 2008. The Mallos explain that the language "no later than December 31, 2008," was put in only to ensure that use-value would be the rule for assessments in 2009. Finally, the Mallos claim that the third step, referred to as full use-value assessment, begins January 1, 2009 and applies for every year thereafter. The Mallos argue that the statute clearly defines these three steps, and that under the facts and circumstances, there is no way to read § 70.32(2r) other than as mandating the phase-in for ten years.

¶ 22. In making their argument, the Mallos focus on Wis. Stat. § 70.32(2r)(b), stating that during the phase-in the assessed value "shall be reduced as follows." Using examples, the Mallos attempt to demonstrate that by eliminating the phase-in after only two years, Wis. Admin. Code § Tax 18.08 directly contradicts the statute because the assessed values of agricultural land are no longer being "reduced as follows," according to § 70.32(2r)(b)1., 2., 3., and 4. To state this another way, the Mallos claim that the DOR's rule is contrary to the unambiguous language of the statute because it reduces the assessed values differently than the "as follows" steps.

¶ 23. The Mallos also argue that the DOR exceeded its authority because nothing in Wis.

411

Stat. § 70.32(2r) grants the DOR authority to truncate the phase-in. According to the Mallos, the DOR is without authority to promulgate Wis. Admin. Rule § Tax 18.08 because.nowhere in § 70.32 does the legislature state that once the phase-in begins, the DOR can end it sooner than provided in the statute. The Mallos concede that § 70.32(2r) is an enabling statute, but argue that it does not give the DOR any authority to truncate the phase-in from ten years to two years. With regard to the Council, the Mallos argue that § 73.03(49) is not an enabling statute and does not give the Council authority to recommend that the DOR shorten the phase-in.

¶ 24. In contrast to the Mallos' arguments, the DOR and the intervening defendants argue that Wis. Admin. Code § Tax 18.08 is valid. Specifically, the DOR and the intervening defendants claim that the rule is consistent with the plain language of Wis. Stat. § 70.32(2r), and is within the authority granted the DOR under the statute. According to the DOR and the intervening defendants, there is no conflict between the rule and the statute because a mandatory ten-year phase-in is contrary to the purpose of transitioning to use-value assessments—preserving farmland and preventing urban sprawl. Furthermore, the language in § 70.32(2r)(b) indicates that the statutory formula in (b)1. through 4. does not apply where the Council has completed its recommendation and the DOR promulgated rules in accordance with that recommendation.

¶ 25. With regard to the DOR's authority to promulgate Wis. Admin. Code § Tax 18.08, the DOR and the intervening defendants claim that the unambiguous language of Wis. Stat. § 70.32(2r) gives the DOR authority to promulgate the rule and to put the use-value assessment system into full effect. For example,

the following phrases in § 70.32(2r) state the phases, and then state the latest possible dates the phase can end:

" . . . or until the farmland advisory council . . . makes its recommendation, but not to extend beyond January 1, 2009 . . . "

" . . . or upon completion of the farmland advisory council's recommendation and promulgation of rules and ending no later than December 31, 2008 . . . "

" . . . as of the January 1 after the valuation method under par. (b) no longer applies . . . ."

The DOR and the intervening defendants claim that based on the unambiguous language of the statute, the DOR has authority to promulgate § Tax 18.08 upon completion of the Council's recommendation. Specifically, the phrase, "no later than December 31, 2008," indicates that the legislature did not intend to delay full implementation of the use-value system if the Council's recommendation was made and if the DOR promulgated a rule. Instead, the statutory language invites a pre-2009 implementation of full use-value because the statute never indicates that full use-value assessment is not to occur sooner than 2009, or not to precede 2009. According to the DOR and the intervening defendants, if the legislature intended for there to be a mandatory ten-year phase-in, a date certain on which full use-value assessment would occur, or a prohibition on implementation of full use-value assessment prior to 2009, the legislature would have indicated so in the statute.

¶ 26. After examining the language of Wis. Stat. § 70.32(2r), we conclude that the statute is unambiguous and grants the DOR authority to promulgate

the emergency rule and the permanent rule, Wis Admin. Code § Tax 18.08. Specifically, we look to language in § 70.32(2r)(b), which provides that mixed-use assessment begins in 1998 "or upon completion of the farmland advisory council's recommendation and promulgation of rules and ending no later than December 31, 2008." This language expressly provides that mixed-use assessment is to end "no later than December 31, 2008." It does not say, however, that it cannot end earlier. When drafting statutes, the legislature usually chooses words very carefully. *See Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984) (expressing the reasonable presumption that the legislature chooses terms "carefully and precisely to express its meaning"). If the legislature intended or desired a mandatory ten-year phase-in, it could have easily chosen words to establish a fixed date in the statute. It did not. The only specific date mandated is the latest possible ending date of December 31, 2008. Since it chose to specify the latest possible ending date, we conclude that likewise, if intended, the legislature would have specified the earliest possible ending date or a mandatory ending date for mixed-use assessment. Accordingly, we conclude that the legislature intended to grant the DOR authority to implement full use-value assessment, upon advice from the Council, including the authority to implement full use-value assessment before January 1, 2009.

¶ 27. We find further support for our conclusion in the language in Wis. Stat. § 70.32(2r)(c). In determining when full use-value assessment would occur, the legislature again did not choose a specific date. Rather, § 70.32(2r)(c) indicates that full use-value assessment will occur "as of the January 1 after the valuation method under par. (b) no longer applies . . . ."

We find it significant that the legislature again chose not to write in a date certain for when use-value assessment would be in full effect. It could have easily done so by stating, for example, "beginning January 1, 2009, agricultural land shall be assessed according to the income that could be generated from its rental for agricultural use." Instead, however, the legislature drafted the statute with flexibility, providing the DOR with authority to establish the full implementation of use-value assessment for agricultural land. We, therefore, conclude that the DOR had authority under § 70.32(2r) to promulgate Wis. Admin. Code § Tax 18.08, and that § Tax 18.08 is consistent with § 70.32(2r).

¶ 28. Although we conclude that Wis. Stat. § 70.32(2r) is unambiguous and therefore, we do not need to look to extrinsic sources and legislative history, we find further support for our conclusion in the unique legislative history presented here. The Mallos, the DOR, and the intervening defendants all point to several different extrinsic sources in furtherance of their respective interpretations of § 70.32.[15] We reject the Mallos'

[15] The Mallos specifically turn to concurrent summaries of the legislation prepared by the Legislative Fiscal Bureau and the Assembly Republican Caucus, a prior interpretation of § 70.32(2r) by the DOR, and the legislature's refusal to approve bills calling for immediate use-value assessment. The Mallos also claim that their interpretation of Wis. Stat. § 70.32(2r) is consistent with an Attorney General's opinion dated January 14, 2000, and this court's decision in *Norquist v. Zeuske,* 211 Wis. 2d 241, 564 N.W.2d 748 (1997). The Mallos claim that all of these sources demonstrate that the legislature intended a mandatory ten-year phase-in from market-value to use-value assessments.

In response, the DOR and the intervening defendants also point to extrinsic sources. First, they argue that we should give

argument that our prior language discussing § 70.32(2r) in *Norquist v. Zeuske,* 211 Wis. 2d 241, 564 N.W.2d 748 (1997) is controlling. We find it significant, however, that the legislature took no action to change or modify the proposed Wis. Admin. Code § Tax 18.08, even though legislators knew of, and some of them actually funded, a challenge to the emergency rule.

¶ 29. First, we reject the Mallos' argument that our discussion of Wis. Stat. § 70.32(2r) in *Norquist* is controlling here. The Mallos rely on *Norquist* where we describe the statutory scheme "transforming agricultural land assessments for property taxes from a mar-

no substantive weight to the Attorney General's opinion or this court's interpretation of the statute in *Norquist.* Specifically, they claim that the Attorney General's opinion is inconsistent with the Attorney General's later position in defending the constitutionality of Wis. Stat. § 70.32(2r) in *Norquist.* Further, they argue that this court's discussion of the statute in *Norquist* was simply background and should not be followed because this court never examined nor considered the authority of the DOR with regard to the necessity or duration of the phase-in. In contrast, however, the DOR and the intervening defendants argue that the unique circumstances surrounding the promulgation of the use-value rule makes the legislature's acquiescence an indictor of legislative intent. The unusual circumstances here include the fact that there was extensive media coverage of the proposed rule and that Senator Charles J. Chvala, the Senate majority leader, and other senators approved funding from the Senate Organizing Committee for "consulting and legal services related to emergency rule-making authority of the Department of Revenue to accelerate the implementation of the use value property tax." These facts, according to the DOR and the intervening defendants, demonstrate that the legislature was aware of the rule itself, understood the rule's impact, and knew of the pending challenge to the emergency rule, yet did not object to the rule and declined the opportunity to correct any perceived wrongs.

ket value system to a use value system." *Norquist,* 211 Wis. 2d at 246 (footnotes omitted). After discussing the first phase, otherwise referred to as the "freeze," this court described the second phase as follows: "Subsection (b) provides for a mixed assessment system that will last from the end of the initial freeze until 2009." *Id.* Relying on this language, the Mallos argue that we previously interpreted § 70.32(2r) as mandating a ten-year phase-in or mixed assessment phase, therefore, the court should interpret the statute similarly here. We reject this argument because the language used in *Norquist* does not control our decision regarding Wis. Admin. Code § Tax 18.08. In *Norquist,* the focus was on a challenge to the constitutionality of § 70.32(2r) as a claimed violation of the Uniformity Clause of the Wisconsin Constitution. *Id.* at 247. We refused to declare the statute either constitutional or unconstitutional because we concluded that the claim or cause of action itself was premature. *Id.* at 252. The statement regarding the phase-in was simply meant as a summary of the statutory provisions, and was in no way related to the DOR's authority to promulgate § Tax 18.08. Moreover, *Norquist* was decided on June 25, 1997, long before the Council made its recommendation on October 18, 1999; and the DOR promulgated the emergency rule on December 14, 1999; and § Tax 18.08 was effective on August 1, 2000. We, therefore, reject the Mallos' argument based on the language in *Norquist,* since it relies on language that is taken out of context. That language was not meant to foreclose the actions later taken by the Council and the DOR.

¶ 30. In contrast to the Mallos' argument based on *Norquist,* we find that the unique legislative history is further support for our conclusion that the DOR had authority under Wis. Stat. § 70.32(2r) to promulgate

417

Wis. Admin. Code § Tax 18.08 and that § Tax 18.08 is consistent with § 70.32(2r). Specifically, we find it significant that the Wisconsin Legislature, acting through the assigned Senate and Assembly committees, did not object, either in whole or in part, to the proposed § Tax 18.08, even though legislators knew of, and some actually funded, a challenge to the emergency rule. The DOR and the intervening defendants note that there was significant media coverage of the proposed permanent rule, which suggests that the legislators could not ignore the existence of the pending rule. Also persuasive, moreover, is that at the same time the rule was making its way through the Senate Committee on Economic Development, Housing and Government Operations and the Assembly Ways and Means Committee, this lawsuit challenging the emergency rule was already pending in Dane County Circuit Court.

¶ 31. Furthermore, Senator Charles J. Chvala and other senators approved funding from the Senate Organizing Committee for "consulting and legal services related to emergency rule-making authority of the Department of Revenue to accelerate the implementation of the use value property tax." This means that even though Senator Chvala and others were funding a challenge to the emergency rule, the permanent rule—based on the same statutory authority and with the same purpose, effect and impact of the emergency rule—was not objected to, either in part or in whole, by either legislative committee. We find these circumstances to be unique and persuasive[16] because the

---

[16] The Mallos argue that the legislature's failure to object to the proposed rule is not indicative of legislative intent. By relying on the legislature's inaction as proof that the legislature approves of the rule, the Mallos contend that all administrative rules will now be insulated from review because all rules must

legislature knew of, and some members actually participated in, a challenge to the proposed rule's impact, yet neither legislative committee objected to § Tax 18.08. *See Estate of Cameron,* 249 Wis. 531, 542, 25 N.W.2d 504 (1946) (under proper circumstances, a subsequent repudiation of a decision or inaction by the legislature may be evidence of legislative intent). We, therefore, conclude that this legislative history is further evidence that the legislature intended that § 70.32(2r) grant the DOR authority to promulgate § Tax 18.08, and that § Tax 18.08 is consistent with § 70.32(2r).

## IV. CONCLUSION

¶ 32. In summary, we conclude that Wis. Stat. § 70.32(2r) unambiguously grants the DOR authority to promulgate Wis. Admin. Code § Tax 18.08, implementing full use-value assessment of agricultural land as of January 1, 2000. Although we base our holding on the plain language of the statute itself, we find further support for our conclusion in the unique legislative history. The legislature knew of the pending challenge to the proposed rule's impact, yet neither legislative committee objected to the rule. Accordingly, we affirm the decision of the circuit court granting summary judgment in favor of the DOR and dismissing this action.

*By the Court.*—The order of the circuit court is affirmed.

¶ 33. JON P. WILCOX, J., and DAVID T. PROSSER, J., did not participate.

follow the process established in Wis. Stat. § 227.19. As we noted previously, we rely on the legislature's inaction in this instance, as further support for our conclusion, because the facts and circumstances are unique.

¶ 34. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. I conclude that the DOR rules eliminating the eight years of the phase-in are inconsistent with the express language of Wis. Stat. § 70.32(2r). The January 14, 2000, Opinion of the Attorney General and the Mallos' brief got it right.

¶ 35. I agree with the Opinion of the Attorney General, which reasons as follows:

> In sum, the common sense reading of Wis. Stat. 70.32(2r) is that farmland is to be assessed at its 1995 assessed value in 1996 and 1997, or until the Council has recommended, and the Department has adopted, rules for implementing use value assessments, whichever is later. If necessary—that is, if the Council fails to make appropriate recommendations—the 1995 assessments are to provide the assessed value of agricultural land until as late as 2008. If the necessary recommendations are made before 2009, then beginning with the later of 1998 or the promulgation of use valuation rules, the assessed value of farmland will equal a weighted average of the land's 1995 assessed value and its use value. The use value weight will start at 10% and increase by 10% each year. If the phase-in begins in 1998, then 100% use valuation will be achieved in 2007 and full use valuation will provide the basis of assessment thereafter. If the necessary rules and recommendations are delayed, so that the partial use value assessment of farmland does not begin until 1999, then 100% use valuation will be achieved in 2008, and full use valuation will provide the basis of assessment thereafter. If the use valuation does not begin until 2000 or later, then the weighted average formula established in Wis. Stat. § 70.32(2r)(b) will provide the assessments for agricultural land until 2009, at which time farmland will be assessed at 100% use value.

> Despite the difficulties presented by the statutory language, I am unable to find a reasonable interpretation

420

of Wis. Stat. § 70.32(2r) or Wis. Stat. § 73.03(49) which would support the Department's ending the statutory phase-in period and implementing immediate use valuation.

. . . .

There appear to be two bases to the Department's claim that it has the authority to immediately terminate the [phase-in] period. The first is the absence of an express definition of the event or events that would result in "the valuation method under par. (b) no longer appl[ying]," as provided in Wis. Stat. § 70.32(2r)(c). The other is the provision in Wis. Stat. § 73.03(49)(a) that the Council is to "[a]dvise the department of revenue . . . on rules to implement use-value assessment of agricultural land . . . ." As I understand this argument, under Wis. Stat. § 73.03(49), one type of advice that the Council might give would be to forego [sic] any further transition to use valuation and to implement immediate, full use value assessments.

The problem with this interpretation is that even if Wis. Stat. § 73.03(49)(a) were read as granting the Council the authority to *recommend* the immediate end of the use value phase-in, there is no other statutory provision for implementing such a recommendation. That is, Wis. Stat. § 70.32(2r) does not contain language that the method of assessment established in paragraph (b) is to be used "for each year beginning with 1998 and ending with the farmland advisory committee's recommendation and promulgation of rules, but no later than December 31, 2008." I find it facially implausible that the Legislature would intend to grant to an advisory council an authority as important as the early termination of the use value phase-in, affecting the property taxes paid by all of the state's farmland and most of its non-farm property, but without any express language evincing such purpose. In point of fact, the express language of Wis. Stat. § 70.32(2r) points to the exact opposite interpre-

421

tation. Paragraph (b) provides that the issuance of the Council's recommendation causes the use value phase-in to start, not end.

The opening language in Wis. Stat. § 70.32(2r)(b) reads "[f]or each year *beginning* with 1998 or upon completion of the farmland advisory council's recommendation and promulgation of rules *and ending* no later than December 31, 2008, the assessed value of the parcel shall be reduced . . . ." When something is to begin either upon Event A (1998) or upon Event B (completion of the Council's recommendation and promulgation of rules) *and* is to end by Event C (no later than December 31, 2008), Event B is a possible beginning date, not ending date. There is no other way to read this language.

*Consideration of Extrinsic Interpretative Materials*

Even if Wis. Stat. § 70.32(2r) were ambiguous, I am not aware of any aspect of the statute's subject matter, object, context or history that would support the claimed authority to immediately end the use value phase-in. The extrinsic aids to interpretation with which I am familiar indicate, to the contrary, that the statute was intended to create an initial *period* when agricultural assessments would be frozen, followed by a gradual phasing in of use valuation over a nine-year period, through a weighted average of frozen and use value assessments.

In addition to the Legislative Fiscal Bureau analysis prepared at the time of the statute's enactment, it is significant that both the Senate and the Assembly defeated bills for immediate full use valuation of farmland. It is hard to reconcile a legislative purpose of authorizing the immediate implementation of full use valuation, with the rejection of bills authorizing immediate, full use valuation.

It is also significant that the Department originally interpreted the statute consistent with this common sense reading.

. . . .

In addition, the use value statute is commonly understood to have resulted from a compromise between urban and rural interests which, on the one hand, allowed farmland to be assessed based on its lower use, as opposed to market, value, but which, on the other hand, attempted to cushion the impact of this change to non-farm property owners and jurisdictions through a gradual phase-in. A party wishing to challenge the Department's proposed use valuation rules would have little difficulty marshaling contemporaneous documents demonstrating this basic understanding.

. . . .

Finally, simply on the basis of the statutory language, the interpretation provided by the Supreme Court in the first *Norquist* case is sensible, straight-forward and textual. In contrast, the Department's argument is striking for its lack of textual basis and for its assumption of a legislative purpose that would almost certainly find affirmative expression, had it really existed.

¶ 36. I also agree with the Mallos' brief that explains how Wis. Stat. § 70.32(2r) works, as follows:

Section 70.32(2r) shifts the method of assessing agricultural land from "market value" to "use value." The statute does not accomplish this shift immediately. Rather it provides for three steps, the freeze, the phase-in and the final rule, as laid out in subdivisions (a), (b) and (c) of the statute.

The first step is the freeze:

. . . .

The freeze started January 1, 1996 and ended December 31, 1997.

Under the statutory scheme, once the freeze ends, the phase-in starts:

> (b) For each year beginning with 1998 or upon completion of the farmland advisory council's recommendation and promulgation of rules and ending no later than December 31, 2008, the assessed value of the parcel shall be reduced as follows:

> . . . .

The statutorily mandated phase-in has a defined beginning and a defined end. The phase-in began in 1998. The phase-in began after the Department promulgated the rules needed to begin the phase-in.

. . . .

Under the statute, phase-in has an end. It ends when the phase-in plays itself out, i.e., after ten years, but not later than December 31, 2008. The "no later than December 31, 2008" provision exists to ensure that full use value assessment would be the rule in 2009 and thereafter. When the statute was enacted in 1995, the legislature could not know when the Department would promulgate the rules needed to begin use value based assessment. If, for example, §TAX 18.07 was not promulgated until 2002, the phase-in would have started in year 2003. In that case, but there would not have been a full ten years of phase-in because the statute mandates full use value assessment no later than 2009. There would have been six, rather than ten, years of phase-in. The legislature wanted to ensure that full use value assessment was the rule starting in 2009, no matter when the recommendation was made and the rules promulgated, so it added the "no later than" language to sub. (b)."

424

The end date of the freeze and the start date of the phase-in are known facts. TAX 18.07 was promulgated in time for the 1998 assessment. Phase-in started in 1998. As the Department recognized in 1997 when it promulgated §TAX 18.08(3) (1997), once started the phase-in would last 10 years, and full use value assessment would become operative January 1, 2008.

Once the phase-in plays itself out, farmland is to be assessed on full use value basis: . . . § 70.32(2r)(c).

¶ 37. For the reasons set forth, I conclude that the DOR rules are clearly inconsistent with the statute and therefore I dissent.

¶ 38. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.